Bush Terminal Company et al., Appellants, *v.* City of New York et al., Respondents.

Argued January 16, 1940; decided March 5, 1940.

*Charles H. Tuttle, Harper A. Holt* and *Abraham Lillienthai* for appellants. Chapter 553 of the Laws of 1931 is unconstitutional if construed as authorizing the several municipalities in the port district to grant local exemption upon such terms and for such periods as each municipality may decide for itself, or if construed as authorizing it to make donations to each of such municipalities in such amounts and on such terms and conditions and for such periods as it may decide. (*Deady* v. *Village of Lyons*, 39 App. Div. 139.) The industrial and office building is not exempted from taxation by chapter 553 of the Laws of 1931 or by any other statute; nor is the property of the Port Authority exempt merely because of ownership by the Authority. Whether or not the Authority could in New York city lawfully go into the speculative real estate business for the purpose of revenue for its activities in New York and New Jersey, it could not thereby secure local tax exemption. (*People ex rel. Andrews* v. *Cameron*, 140 App. Div. 76; 200 N. Y. 585; *Helvering* v. *Gerhardt*, 304 U. S. 405; *Matter of California Toll Bridge Authority*, 212 Cal. 298; *Bates* v. *State Bridge Comm.*, 109 W. Va. 186; *Alabama State Bridge Corp.* v. *Smith*, 217 Ala. 311; *Kelley* v. *Earle*, 320 Penn. St. 449; *Bank of United States* v. *Planters' Bank of Georgia*, 9 Wheat. 904; *Briscoe* v. *The Bank of Kentucky*, 11 Pet. 257; *Sloan Shipyards Corp.* v. *United States Shipping Board*, 258 U. S. 549; *United States ex rel. Skinner & Eddy Corp.* v. *McCarl*, 275 U. S. 1; *Susquehanna Power Co.* v. *State Tax Comm.*, 283 U. S. 291; *People ex rel. Mayor* v. *Tax Assessors*, 111 N. Y. 505; *Clark* v. *Sprague*, 113 App. Div. 645; *People ex rel. Commissioners* v. *Sancomb*, 259 N. Y. 1.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* of counsel), for State of New York, and *Julius Henry Cohen Austin J. Tobin* and *Daniel B. Goldberg* for Port of New York Authority, respondent. The Port Authority is a governmental agency of the States, performing essential governmental functions. (*State* v. *Port of Astoria*, 79

Ore. 1; *Graves* v. *New York ex rel. O' Keefe*, 306 U. S. 466; *Helvering* v. *Gerhardt*, 304 U. S. 405; *Gaynor* v. *Marohn*, 268 N. Y. 417; *People ex rel. Buffalo & Fort Erie Public Bridge Authority* v. *Davis*, 277 N. Y. 292; *Boyle Holding Corp.* v. *Medgreen Realty Corp.*, 154 Misc. Rep. 189; *New Jersey Interstate Bridge & Tunnel Comm.* v. *Jersey City*, 93 N. J. Eq. 550; *State Highway Comm.* v. *Elizabeth*, 102 N. J. Eq. 221; *Commissioner of Internal Revenue* v. *Ten Eyck*, 76 Fed. Rep. [2d] 515; *Callanan Road Imp. Co.* v. *McMullen Co.*, 253 App. Div. 424; 280 N. Y. 536; *People ex rel. Rogers* v. *Graves*, 245 App. Div. 452; 271 N. Y. 543; *Webb* v. *Port Comm. of Morehead City*, 205 N. C. 663.) The Port Authority property is exempt by statute from taxation. (Cons. Laws, ch. 60, § 4, subds. 2, 3; L. 1931, ch. 553; *San Antonio Ind. School Dist.* v. *Water Works Board*, 120 S. W. Rep. [2d] 861; *Passaic Valley Sewerage Commrs.* v. *Jersey City*, 93 N. J. L. 427; *Knoxville Housing Authority, Inc.,* v. *Knoxville*, 174 Tenn. 76; *Opinions of Justices*, 235 Ala. 485; *Webster* v. *Board of Regents*, 163 Cal. 705; *State Land Settlement Board* v. *Henderson*, 197 Cal. 470; *Board of Regents* v. *Hamilton*, 28 Kan. 376; *People* v. *Nelson*, 133 Ill. 565; *Paine* v. *Port of Seattle*, 70 Wash. 294; *Egan Ind. Cons. School District* v. *Minnehaha County*, 65 S. D. 32; *People ex rel. Mayor* v. *Assessors*, 111 N. Y. 505.) The Port Authority is tax immune as the governmental agency of the States. (*Lessee of Marlatt* v. *Silk*, 11 Pet. 1; *Jersey City* v. *Blum*, 101 N. J. L. 93; *Township of Teaneck* v. *State Board of Tax Appeals*, 110 N. J. L. 28; 111 N. J. L. 242; *Dornan* v. *Philadelphia Housing Authority*, 331 Penn. St. 209; *People ex rel. Mayor* v. *Assessors*, 111 N. Y. 505; *Newark* v. *Verona Township*, 59 N. J. L. 94; *Romano* v. *Housing Authority*, 123 N. J. L. 428; *New Jersey Interstate Bridge & Tunnel Comm.* v. *Jersey City*, 93 N. J. Eq. 550.) The rental of the terminal building does not curtail its tax exemption. (*People ex rel. Mayor* v. *Assessors*, 111 N. Y. 505; *People ex rel. Buffalo & Fort Erie Public Bridge Authority* v. *Davis*, 277 N. Y. 292; *People ex rel. Trustees of Masonic Hall & Asylum Fund*

v. *Miller*, 279 N. Y. 137; *Knoxville Housing Authority, Inc.*, v. *Knoxville*, 174 Tenn. 76; *Opinions of Justices*, 235 Ala. 485; *New York ex rel. Rogers* v. *Graves*, 299 U. S. 401; *Commissioner of Internal Revenue* v. *Ten Eyck*, 76 Fed. Rep. [2d] 515; *United N. J. R. R. Co.* v. *Jersey City*, 57 N. J. L. 563; *Newark* v. *Verona Township*, 59 N. J. L. 94; *Brocket* v. *Ohio & Penn. R. R. Co.*, 14 Penn. St. 241.) There is no valid constitutional objection to the proposed agreement under chapter 553 of the Laws of 1931. (*Levy Leasing Co.* v. *Siegel*, 258 U. S. 242; *Matter of New York City Housing Authority* v. *Muller*, 270 N. Y. 333; *Mars Realty Corp.* v. *Sexton*, 141 Misc. Rep. 622; *South Carolina Power Co.* v. *South Carolina Tax Comm.*, 52 Fed. Rep. [2d] 515; 286 U. S. 525; *Madera Water Works* v. *Madera*, 228 U. S. 454; *Puget Sound Power & Light Co.* v. *Seattle*, 291 U. S. 619; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Citizens' Tel. Co.* v. *Fuller*, 229 U. S. 322; *People ex rel. Buffalo & Fort Erie Public Bridge Authority* v. *Davis*, 277 N. Y. 292.)

*William C. Chanler, Corporation Counsel (Robert M. Benjamin* of counsel), for City of New York et al., respondents. Chapter 553 of the Laws of 1931 is constitutional. (*Puget Sound Power & Light Co.* v. *Seattle*, 291 U. S. 619; 292 U. S. 603; *State Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527; *People ex rel. 1170 Fifth Ave. Corp.* v. *Goldfogle*, 254 N. Y. 476; *People ex rel. Buffalo & Fort Erie Public Bridge Authority* v. *Davis*, 277 N. Y. 292; *People ex rel. Bronx Parkway Comm.* v. *Common Council of Yonkers*, 106 Misc. Rep. 579; 190 App. Div. 957; 229 N. Y. 1.)

LEHMAN, Ch. J. The Port of New York Authority, hereinafter referred to as the Port Authority, acquired title to an entire square block of land in the borough of Manhattan, city of New York. The land had previously been divided into many parcels and, with the old buildings on it, had been subject to the general tax on real property. The Port Authority entered into a written contract with eight trunk line railroads entering the Port of New York

district whereby it agreed to erect an " Inland Terminal Building " upon the land it had acquired and to lease to the railroads, for a term of five years, with the privilege and option on the part of the railroads to renew said lease for nine successive periods of five years each, the " basement, portions of the ground floor * * * to be used and operated by them as a Union Inland Freight Station through such organization as may be formed by said Carriers for such purpose." Pursuant to said contract the Port Authority has demolished the old buildings on the land and has erected a large modern building sixteen stories high, designated by the Authority as Inland Terminal No. 1. The space leased to the eight trunk line railroads is now actually in use by them as an Inland Terminal Station for the transportation, assemblage and the distribution of less-than-carload freight. In the space retained by the Authority on the street floor there are a number of stores. The upper stories of the building are suitable for manufacturing, office and other industrial and business uses, and have been rented and are being offered for rent to the public at large for private businesses in the same manner as other owners of similar buildings usually rent and offer for rental space in the buildings they own.

The Legislature, by chapter 553 of the Laws of 1931, has provided that: " To the end that counties, cities, boroughs, villages, towns, townships and other municipalities in the port of New York district, may not suffer undue loss of taxes and assessments by reason of the acquisition and ownership of property therein by The Port of New York Authority (hereinafter called the Port Authority), the Port Authority is hereby authorized and empowered, in its discretion, to enter into a voluntary agreement or agreements with any county, city, borough, village, town, township or other municipality in said port district, whereby it will undertake to pay a fair and reasonable sum or sums annually in connection with any marine or inland terminal property owned by it, not in excess of the sum last paid as taxes upon such property prior to the time of

its acquisition by the Port Authority." The statute authorizes, also, every municipality to enter into such agreement and further provides that the sums so received shall be devoted to purposes to which taxes may be applied, unless and until otherwise directed by the law of the State in which such municipality is located.

The Port Authority has offered to enter into a contract whereby it agrees to pay to the city of New York the sum of $60,064.10, which is equal to the taxes fixed on all the parcels in the block of land prior to the time they were acquired by the Port Authority for the construction of the terminal building. That sum is much less than the taxes would be upon the land and new building, which cost about $16,000,000, if assessed as other land and buildings in the city of New York are assessed. The plaintiffs own extensive buildings in the city of New York and offer for rental in those buildings space for warehouse, manufacturing or office use. Challenging both the validity of the statute and its application to the building constructed by the Port Authority, the plaintiffs have brought this action to restrain the Port Authority and the city from entering into the proposed contracts.

The Port of New York is commercially a single district, though it lies partly in New Jersey, and many local governmental units or municipalities are contained in it. The freight terminals of almost all the railroads which serve the port are on the New Jersey side of the Hudson river and the most important business and industrial centers of the port are in New York. The State of New York, or an agency exercising only powers which the State of New York could confer upon it, could not, acting alone, solve the problems connected with the efficient development and regulation of the commerce of the port, nor could the State of New Jersey or an agency acting under authority conferred by that State. In 1917 the Legislatures of New York and of New Jersey authorized the Governors of those States to appoint a Commission which should study and report on the problem. (L. 1917, ch. 426 of N. Y.; L. 1917, ch. 130

of N. J.) After the Commission had presented its report and recommendations the Port Authority was established by a compact made by the States of New York and New Jersey on April 30, 1921, pursuant to chapter 154 of the Laws of 1921 of New York and chapter 151 of the Laws of 1921 of New Jersey. The compact was confirmed by the Congress of the United States in August, 1921. (Public Resolution No. 17, 67th Congress; 42 U. S. Stat. [Concurrent Resolutions, 1921] p. 174.)

The compact defines the Port Authority as " a body corporate and politic," having the power " to purchase, construct, lease and/or operate any terminal or transportation facility within said district; and to make charges for the use thereof." The powers granted were to be exercised to carry out a " Comprehensive Plan " for the development of the port, which the Port Authority was directed to prepare and submit to the Legislatures of the two States. The " Comprehensive Plan " was adopted by both Legislatures in 1922. (Laws of 1922, ch. 43, of New York; Laws of 1922, ch. 9, of New Jersey.) It provides, among other things, that " The port authority shall be regarded as the municipal corporate instrumentality of the two states for the purpose of developing the port and effectuating the pledge of the states in the said compact, but it shall have no power to pledge the credit of either state or to impose any obligation upon either state, or upon any municipality, except as and when such power is expressly granted by statute, or the consent by any such municipality is given."

The power of the Port Authority to construct and operate a " terminal or transportation facility " is expressly conferred by the statute. The basement and the space leased for the railroad carriers for use as a " Union Inland Freight Station " constitutes, it is plain, a " terminal or transportation facility " as defined in the compact. By the terms of the lease that space must be used by the lessees as a " place named in the carriers' tariffs at which consignees and shippers may receive and deliver less than carload freight transported or to be transported by any or all of the carriers

in accordance with the applicable provisions of their respective tariffs." The plaintiffs maintain, however, that even though the Port Authority might have power to purchase land and construct thereon a freight terminal, it has no power to construct a sixteen-story building of which only the basement and part of the first story are intended for use as a freight terminal and all the remainder of the building is intended to be offered for use to the public for factory, loft or other use. The plaintiffs further maintain that if the Port Authority has power to erect such a building, the building is subject to the same taxes as other commercial buildings.

The evidence shows convincingly that the Union Inland Terminal Freight Station facilitates greatly the transportation and delivery of freight in less-than-carload lots. The court at Special Term has found, and its finding is not challenged, " That the construction of Inland Terminal No. 1 was intended to and has eliminated a large amount of duplication of trucking and traffic congestion and was intended to, and did bring about an enormous saving of time and expense to the merchants and consumers of the Port of New York district, and was intended to, and is contributing to the health, welfare and safety of the people of the Port district." The erection of inland terminals in order to obtain such economic benefits for the public was within the scope of the " Comprehensive Plan;" yet under the compact and Comprehensive Plan the Port Authority could not impose any obligation upon either State or any municipality, even to obtain a benefit so important to the public. Facilities which save the consumer time and money must be acquired, if at all, through the sale of bonds which are not an obligation of State or city. The anticipated revenue from each proposed project must be sufficient to pay the expense of operation and maintenance as well as the interest and sinking fund requirements of the bonds issued to pay for the project. The price fixed for economic benefit must be high enough to provide that revenue, yet not so high that it becomes economically

impossible for merchants and consumers to pay. The evidence established and the court at Special Term has found that without the upper stories it would have been economically impossible to construct the Inland Terminal Station. Such a terminal for efficient operation should occupy a full block of land, and land in New York is too costly to be used economically for such a purpose alone. The court has found that without the addition of upper stories which might be utilized for revenue producing purposes, " the Port Authority would have been unable to borrow the funds needed to finance the erection of the Inland Terminal Station; and consequently would have been wholly unable to carry out and effectuate the mandate of the aforesaid Compact and Comprehensive Plan."

The construction of a great building, over the space used for the freight terminal, in order to obtain revenue, might transcend the powers of the Authority if the erection of the freight terminal alone would have been feasible, but the mandate and the express grant of power to the Port Authority to construct terminals include as an incident the power to use appropriate means to carry out the mandate. Acts performed in carrying out a legislative mandate, as an incident to the exercise of a general power conferred by the Legislature, are not *ultra vires* where they were within the contemplation of the Legislature when it granted the general power.

In this case the evidence clearly establishes that the Legislature contemplated that in constructing inland terminals the Port Authority might erect buildings which would include additional space for rental, from which revenue might be derived and that the Legislature intended to confer upon the Port Authority power to construct such buildings. The Commission appointed, under the statutes of 1917 enacted by both States, stated in its report to the Legislatures of both States that inland terminals in Manhattan " are designed with four or more floors to be rented for warehouse purposes," and also points out that the discussion in the report of operating costs of such terminals

" takes cognizance of the possibility of building one or two additional floors and renting them for manufacturing or office purposes at a much higher unit rate than can be obtained from warehouse floors." The report throws light upon the meaning and intent of the compact between the States. In that compact, after conferring upon the Port Authority power to construct " any terminal or transportation facility," the Legislature defined the word " facility " as inclusive of " all works, buildings, structures, appliances and appurtenances necessary and convenient for the proper construction, equipment, maintenance and operation of such facility or facilities or any one or more of them." Any possible doubt that the Port Authority, empowered to construct " any terminal or transportation facility," is authorized to construct terminals with additional space for other purposes is removed by the " Comprehensive Plan " prepared pursuant to the compact and adopted by the Legislatures; for that plan expressly provides " terminals to contain storage space and space for other facilities." (L. 1922, ch. 43, § 5.)

Of course, the power to construct terminals which incidentally contain " storage space and space for other facilities " might be transcended if, under cover of that power, the Port Authority assumed to construct an office or loft building intended primarily for revenue and only incidentally for terminal purposes. The factors involved are often relative, not absolute, and the test may be one of degree. (Cf. *Kaukauna Water Power Co.* v. *Green Bay & Mississippi Canal Co.*, 142 U. S. 254.) Here, again, the record shows persuasively that the Port Authority did not exceed the power which the Legislature intended to confer upon it. Pursuant to the provisions of the compact, Port Authority reports annually to the Governors of New York and New Jersey. These reports are public documents and through them the Governors and the Legislatures of the two States were fully informed that the Port Authority intended to erect Inland Terminal No. 1 and other similar terminals, yet the Governors and Legislatures manifested

approval of the construction of the Inland Terminal Building in its present form including the use of the upper floors for office, loft and manufacturing purposes.

The question remains whether the Legislatures which empowered the Port Authority to construct such buildings also made them exempt from taxation or authorized the Port Authority or the city of New York to agree that in lieu of such taxes the Port Authority should pay a sum not greater than the taxes levied upon the block of land and the buildings on it before acquisition by the Port Authority. Arguments that the Legislature did not intend that chapter 553 of the Laws of 1931 should apply to such buildings as Inland Terminal No. 1 are refuted by the circumstances under which the statute was adopted. Previous discussions between the Port Authority and the city leave no doubt that the statute was enacted with full knowledge that the Port Authority was about to erect Inland Terminal No. 1 and in its present form, and intended to erect other terminals of the same kind if Inland Terminal No. 1 proved its usefulness and that its purpose was to meet the problem which would be created by the erection of such terminals.

The statute does not in express terms confer tax exemption. Its language indicates that the Legislature assumed that such buildings, erected in accordance with the provisions of the compact and Comprehensive Plan, *are* exempt from taxation. The withdrawal of large blocks of land from the taxing power of a municipality might seriously cripple the municipality. The Port Authority had previously indicated that it recognized the problem and the city of New York had previously indicated its concern. The expressed purpose of the statute was to enable the Port Authority to arrive at an agreement with a municipality by which the Port Authority would assume an obligation to pay to the municipality a sum which might equal but could not exceed the taxes received by the municipality from the land while it was still subject to taxation. The validity of the statute is not open to challenge by the plaintiffs if, in fact, as the Legislature apparently assumed, the

land and building of the Port Authority is exempt, for the plaintiffs would certainly not be aggrieved by a voluntary payment made by the Port Authority to the city of New York.

The Port Authority is " a body corporate and politic " created by two States to exercise the powers of both States for a public purpose in which the people of both States are interested. Property held by the Port Authority for a public purpose might be taxed by the State in which the property is situated unless by the compact creating the joint agency both States agreed expressly or by fair implicacation that the property of the joint agency used to carry out the public purpose should not be taxed by either State. There is no express provision in the compact that property held by the joint agency for a joint public purpose should be withdrawn from the taxing power of the States, acting directly or through local tax districts; but we are told that the tax exemption must be read into the compact by necessary implication. From the start there has been difference of opinion in regard to whether the States have jointly conferred upon the property of the agency exemption from taxation and from the start there has been general recognition that such exemption, if applied to all the property of the Port Authority, might at times work undue harm to municipalities within the Port District.

Though ordinarily only clear and unequivocal language can create a special exemption from a general tax, yet property of a State or an agency of the State, held for a public purpose, is ordinarily not subject to a tax, and a tax imposed by a statute, though general in terms, will not be held to apply to such property. " The property held by the State, or by any of its municipal divisions, for public purposes, is not, and never has been subject, to taxation * * *. It is never supposed to be included in the terms of any law providing for the imposition of taxes, however general it may be, not because it is exempt, in the sense in which that term is generally understood, but for the reason that in the nature of things it never was and never can be

taxable." (*Matter of Hamilton*, 148 N. Y. 310, 313.) The Tax Law (Cons. Laws, ch. 60) of the State of New York provides that " all real property within this state is taxable unless exempt from taxation." (§ 3.) By subdivisions 2 and 3 of section 4, " property of this state " and " property of a municipal corporation of the state held for a public use " are declared exempt. The exemption so declared is based on common law principles. (Cf. *People ex rel. City of Amsterdam* v. *Hess*, 157 N. Y. 42, 45.) Though the Comprehensive Plan declares that the Port Authority shall be regarded as " the municipal corporate instrumentality of the two States for the purpose of developing the port," it is not in strict sense " a municipal corporation " of the State of New York, and under a strict literal construction of the Tax Law its property might be subject to taxation. A " municipal corporate instrumentality " of two States is a creature of statute and is unknown to the common law; but argument, certainly not without force, may be made that on common law principles the property of an agency created by two States should be free from taxation by either State and that into the compact creating the municipal corporate instrumentality there must be read by implication a provision that the property of the municipal corporate instrumentality so created should be entitled to the same immunity from taxation which property of a municipal corporation created by each State would enjoy.

Both States might have removed possible doubt on that subject if they had chosen to state, expressly, whether or not such property would be subject to tax. Perhaps the omission was not inadvertent. Under the Comprehensive Plan a vast field of possible activity was outlined. With the approval of both States the Port Authority might build or acquire bridges, tunnels, wharves and buildings. Though all the property would be held by a joint agency of the two States for a common public purpose, there would, it was clear, be great variation in the nature of the property and the expected benefits. In some cases the taxation by one State or local division might be so unfair that it might

reasonably be regarded as a violation of the spirit, if not the letter, of the compact; while in other cases the withdrawal of great parcels of real property from the taxing power of the locality might unfairly cause hardship to the locality, without adequate benefit in return. The two States, when approving a project, might agree that property required for that project should be subject to taxation, even though otherwise exempt under the compact, or might, if they chose, exempt the property from taxation even though otherwise it would be subject to taxation. The tax status of the property of the Port Authority under the compact might at any time be defined in unequivocal language by statutes of the two States or might be varied in particular cases by such statutes in accordance with considerations of expediency.

A Commission appointed in 1925 to report upon the tax status of property held by the Port Authority stated in its report: " We are agreed, however, that the determination of these questions either by learned briefs or by court decisions is of doubtful importance because the statesman-like handling of the problem of the taxation of Port Authority property should rest upon inescapable facts of economics and public opinion, and not upon legal theories or judicial decisions. We are agreed that certain Port Authority property must be made taxable by the legislatures of the two states regardless of its present legal status; we are also agreed that certain types of property must be made tax free, unless the entire conception of the Port Authority as a self-supporting joint agency of the two states is to be abandoned." (New York Legislative Documents, 149th Session, vol. 17, Document No. 90, p. 9.)

Since that time the Legislatures of the two States have joined in defining the tax status of property held by the Port Authority for *particular projects*. The status under the compact of the property held for other forms of public use becomes important only where the Legislatures of the two States have failed to provide by an appropriate statute what status such property should have.

In this case they have not failed to so agree. The State of New Jersey has enacted a statute identical with chapter

553 of the Laws of 1931, here challenged. Mr. Justice
FRANKENTHALER has pointed out in his opinion at Special
Term: " That the Legislatures of both States regarded the
property of the Port Authority as immune from taxation
is confirmed by the very language of chapter 553 of the
New York Laws of 1931 and of chapter 69 of the New Jersey
Laws of 1931." They might have, as we have said, with-
drawn that immunity if it existed. They chose not to do
so. Instead, they authorized the Port Authority to enter
into a voluntary agreement to pay to a municipality a sum
which might in some measure compensate the municipality
for loss of taxes which would have been paid if the Port
Authority had not acquired the property. We need not
now weigh the arguments intended to convince that under
the compact the property of the Port Authority is or is
not immune from taxation, nor need we decide whether the
Inland Terminal No. 1 might be taxed if the Port Authority
should not make the agreement which chapter 553 of the
Laws of 1931 purports to authorize. There may, perhaps,
be some doubt on those questions. There can be no doubt
that the Legislatures of the two States, in unequivocal
language, have manifested an intention that at least where
such an agreement is made the property shall be exempt.
The court must give effect to the legislative intent so mani-
fested. We find no basis for the claims that the statute
so construed constitutes an unlawful delegation of legislative
power or deprives the plaintiff of the equal protection of
the law.

Property held by an agency of the State is ordinarily
immune from taxation only while it is used for a public
purpose. Property used primarily to obtain revenue or
profit is not held for a public use and is not ordinarily
immune from taxation, but property held by a State agency
primarily for a public use does not lose immunity because
the State agency incidentally derives income from the
property. (2 Cooley on The Law of Taxation [4th ed.],
§ 640; *Inhabitants of Wayland* v. *County Commrs. of Middle-
sex*, 4 Gray [Mass.], 500. Cf. *People ex rel. Mayor* v. *Board*

*of Assessors,* 111 N. Y. 505.) Here the evidence and the findings and conclusions of the court at Special Term establish beyond possibility of successful challenge that the use of the building above the terminal for purposes of revenue is purely incidental to the purpose of the Port Authority to operate a terminal facility at a charge which the consumer can pay. There is here no purpose to make a profit and without the use of the upper stories of the building for revenue the public purpose could not be carried out.

A municipality or agency of the State carrying out a public purpose may at times compete with private business. Those owning the private business are not deprived of their right to the equal protection of the law, guaranteed by the Constitution of the United States, because the private business is subjected to a tax from which the State agency is immune. (*Puget Sound Power & Light Co.* v. *County of King,* 264 U. S. 22.) The general principles stated in the opinion in that case justify the exemption from taxation of property held by a public agency for a public purpose and not primarily for revenue, though as an incident of the execution of its public purpose the public agency derives revenue from a use of the property in competition with property put to similar use by private owners. (Cf. *State Board of Tax Commissioners* v. *Jackson,* 283 U. S. 527, 537.)

Other objections raised by the appellants to the right of the defendants to enter into any contract as authorized by the statute have been considered by the court and rejected. We do not now consider or decide whether the proposed contract which the plaintiffs seek to enjoin is authorized in all parts by the statute or whether exemption would continue even if the building should cease to be used as an inland terminal. No such questions are properly before us. We decide only that the parties may make a contract in accordance with the provisions of the statute.

The judgment should be affirmed, with costs.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Judgment affirmed.