In the Matter of the CITY OF NEW YORK, Respondent, v. ROSWELL R. SANFORD et al., Constituting the Board of Assessors of the Village of Margaretville, Appellants.

Third Department, May 23, 1961.

*Herman E. Gottfried* (*Abraham Streifer* of counsel), for appellants.

*Charles H. Tenney, Corporation Counsel* (*William A. Kaercher* of counsel), for respondent.

*Per Curiam.* The Board of Assessors of the Village of Margaretville appeal from two orders made at Special Term, Supreme Court, Broome County (McAvoy, J.) each dated July 8, 1960. The first order strikes out certain defenses as sham, frivolous and insufficient in law. The second order predicated on the first, grants the application of petitioner-respondent and reduces the assessment upon its sewage disposal system within the Village of Margaretville by giving effect to the exemption agreement between the governing body of the Village of Margaretville and the City of New York.

This proceeding was brought by the petitioner, the City of New York, pursuant to article 7 of the Real Property Tax Law to review the 1960 assessment of its sewage disposal system within the Village of Margaretville which was fixed by the appellants, constituting the Board of Assessors of the Village of Margaretville, at $378,651.

The petition states in substance that the city is the owner of certain real property situated in the Village of Margaretville; that such real estate was assessed by the village; that the assessment included an assessment against certain structures of the city used for sewage disposal purposes; that the village entered into an agreement in writing exempting such sewage disposal structures from taxation for a period of 10 years commencing with the assessment of 1959; that such sewage disposal structures were wholly exempt pursuant to subdivision 3 of section 406 of the Real Property Tax Law and that the assessment should be reduced by the amount of the assessment on such structures.

The answer raises affirmative defenses as follows: (1) that respondents had effectively rescinded such agreement; (2) that

such agreement was made without lawful authority and is unconstitutional; (3) that the document granting the exemption is one of three parts of an integrated agreement which petitioner has breached; (4) that the agreement was induced by fraud.

The reply in substance denied the material set up in the defenses in the answer. Following the service of the reply the city moved to strike out certain allegations contained in the answer on the ground that they were sham, frivolous, irrelevant, unnecessary and impertinent and to strike out the affirmative defenses contained in the answer on the ground that they were legally insufficient.

The factual background is as follows:

The City of New York constructed a sewage disposal plant near the north end of the Pepacton Reservoir, to prevent the Village of Margaretville by its sewage disposal methods from polluting the city water supply system. In order to effectuate such sewage disposal the city employed a contractor to install the necessary pipes throughout the village. Upon completion of this work the village claims the contractor left the streets and sidewalks in a state of disrepair. On September 22, 1958, a contract was executed between the village and the contractor which provided that for the sum of $8,000 and the return of the contractor's deposit the contractor should repave certain streets and sidewalks. On September 23, 1958 the city and the village executed a contract which referred to the first contract and provided that the city should pay the village the $8,000.

Also on September 23 another contract, the subject contract, was made between the city and Village Board which recited the following key points: that the city had constructed the disposal plant and proposed to operate and maintain it at its own expense for the collection of the village sewage; that this would not only benefit the city's water supply, but would also assure the health and welfare of the village citizens because of the sanitary disposition of sewage; that because of these mutual benefits the disposal plant and system would be exempt from taxation for a period of 10 years commencing with the assessment for the year 1959; that the lands upon which the plant was situate would not be assessed in excess of $25,000 for such period; that the city would withdraw its protest relative to the assessment for the year 1959; and that the village would co-operate in preventing deleterious or dangerous substances from entering the collecting system.

Appellant Village Board argues on appeal that (1) the agreement was in no way binding and could be unilaterally rescinded at any time, (2) that the agreement was *ultra vires* because of

inadequate consideration, (3) that the power to make the agreement was an unconstitutional delegation of power by the Legislature, and (4) that the breach of the other agreements by the city justified the rescission of the tax exemption agreement because all the agreements should be construed together.

The sewage disposal plant would ordinarily be taxable property to the village (Real Property Tax Law, § 300). In 1956, however, the Legislature enacted chapter 667 which provides: " Real property owned by a municipal corporation not within its corporate limits while used as a sewage disposal plant or system, including necessary connections and appurtenances, shall be wholly or partially exempt from taxation and exempt from special ad valorem levies and special assessments to the extent provided in section four hundred ninety of this chapter, by any municipal corporation in which located, provided the governing board thereof shall so agree in writing." (Tax Law, § 4, subd. 16-a; now Real Property Tax Law, § 406, subd. 3.)

Appellant contends that this statute does not provide for an agreement in the form of a binding contract. However a legislative memorandum concerning the statute concisely outlines its purpose and intent and that upon enactment it was meant to be made binding on the respective municipalities.

" Memorandum of Senator Warren M. Anderson
" Municipal real property, exempt      A. I. 3853, Pr. 4286
Rules Com. Ch. 667.

" *Tax Law, § 4.* The City of Binghamton plans to construct a sewage disposal plant in the adjoining Town of Vestal. The officials of both municipalities have worked out a satisfactory arrangement relative to the assessment of this installation, by the Town of Vestal.

" It is the desire that this agreement be made binding on the respective municipalities. Specific local law on this subject is not possible due to the provisions of Article 16, Section 1, which requires that any exemption or partial exemption of taxation be granted only by a general law.

" The necessity of such legislation is attested by the fact that the New York State Department of Health very emphatically favors the enactment of this bill. They point out in their memorandum that the problem confronting the City of Binghamton and the Town of Vestal is typical of similar problems that will arise in other areas of the state.

" The enactment of this bill will substantially advance the cause of pollution abatement." (N. Y. Legis. Annual, 1956, p. 324.)

While it is true that a municipality may not contract in perpetuity (63 C. J. S., Municipal Corporations, § 979, p. 534) a contract for a 10-year period is safely within the bounds of propriety where the enabling statute contains no limitations of the term.

There appears to be a mutuality of consideration here, in that in exchange for a valuable public service, the village agreed to grant tax exemption. However this agreement was made pursuant to expressed legislative intent, and it is this legislative intent which governs the construction of the agreement. We are concerned here with the delegation of legislative power, general in that it applies State-wide and specific in that it defines explicitly the limits within which the power may be exercised. It would not seem important whether the village received a consideration for the agreement, bargained for or not — it was merely exercising a governmental function (cf. *Bush Term. Co. v. City of New York,* 282 N. Y. 306). At page 321 Chief Judge LEHMAN writing for the court said: " We need not now weigh the arguments intended to convince that under the compact the property of the Port Authority is or is not immune from taxation, nor need we decide whether the Inland Terminal No. 1 might be taxed if the Port Authority should not make the agreement which chapter 553 of the Laws of 1931 purports to authorize. There may, perhaps, be some doubt of those questions. *There can be no doubt that the Legislatures of the two States, in unequivocal language, have manifested an intention that at least where such an agreement is made the property shall be exempt. The court must give effect to the legislative intent so manifested. We find no basis for the claims that the statute so construed constitutes an unlawful delegation of legislative power or deprives the plaintiff of the equal protection of the law.*" (Emphasis supplied.)

The instant agreement was a legislative act by the Village Board which carried into effect a tax exemption authorized by the Legislature by virtue of a constitutional statute (*Bush, supra*). This exemption is not revocable, it is binding. Once the local consent is given the legislation goes into effect and it would be as if control had left the hands of the Village Board. Provisions as to the duration of the exemption may or may not be effective, but that problem is not present here.

Appellants' contention that the subject agreement was integrated with the other two agreements so that a breach of those agreements affects this one is meritless. There is no reference to these agreements in the subject agreement. The other agreements concern management not legislative functions. In

this tax certiorari proceeding only the question whether the tax assessment is valid can be litigated (*People ex rel. Ambroad Equities* v. *Miller,* 289 N. Y. 339, 342; *People ex rel. Bingham Operating Corp.* v. *Eyrich,* 265 App. Div. 562).

The orders should be affirmed, with $10 costs.

BERGAN, P. J., COON, GIBSON, REYNOLDS and TAYLOR, JJ., concur.

Orders affirmed, with $10 costs.