EVANS-ARISTOCRAT INDUSTRIES, INC., A NEW JERSEY
CORPORATION, PLAINTIFF, v. CITY OF NEWARK, A
MUNICIPAL CORPORATION, DEFENDANT AND THIRD-
PARTY PLAINTIFF, v. PORT AUTHORITY OF NEW
YORK AND NEW JERSEY, A CORPORATION, THIRD-
PARTY DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided July 17, 1974.

*Messrs. Hellring, Lindeman & Landau,* attorneys for plaintiff (*Mr. David Landau,* appearing).

*Mr. Jonathan Kohn,* attorney for defendant and third-party plaintiff City of Newark.

*Mr. Francis A. Mulhern and Hugh H. Welsh,* attorneys for third-party defendant Port Authority of New York and New Jersey.

*Mr. William F. Hyland,* Attorney General of New Jersey, intervenor (*Mr. Robert S. Schulman,* Deputy Attorney General, appearing).

KIMMELMAN, J. S. C. At issue here is the extent to which the Port Authority of New York and New Jersey (Port Authority) may be subjected to injunction suits sanctioned by

the Attorney General of New Jersey pursuant to the discretion vested in him by *N. J. S. A.* 32:1–161 to waive that agency's sovereign immunity from suit.

The precise question is whether a private litigant, plaintiff Evans-Aristocrat Industries, Inc., shall be permitted to amend its complaint to assert a mandatory injunction claim against the third-party defendant Port Authority. The Attorney General of New Jersey has moved to intervene in this action for the express purpose of lending his name in order to enable plaintiff to litigate its injunction claim against the Port Authority. Resolution of the issue depends upon an interpretation of *N. J. S. A.* 32:1–61 which waives the sovereign immunity of the Port Authority in suits, actions or proceedings for orders or decrees restraining, enjoining or preventing the Port Authority from committing or continuing to commit any act or acts only where the Attorney General of New York or the Attorney General of New Jersey brings such suit, action or proceedings in his discretion on behalf of any person or persons who requests him to do so.

The issue arises in the context of the following factual background as alleged by plaintiff:

1. The Port Authority leases from defendant City of Newark (city) land used and occupied in the operation of Newark International Airport.

2. The lease documents between the city and the Port Authority require the latter, in connection with the expansion of the airport facilities recently undertaken and now being completed, to relocate any existing water main, sewer or drainage ditch deemed necessary, with the proviso that the city approve plans and specifications for any such relocated or redesigned facility.

3. Earthwork, filling and grading undertaken and performed incident to the expansion of the airport is alleged to have altered established drainage patterns in the southeastern sector of the city known as the Waverly District of the municipal sewerage system.

4. In connection with such expansion work the Port Authority constructed a pumping station designed to facilitate the drainage in the Waverly District and to prevent flooding. The pumping station was to assist the preexisting Waverly drainage ditch in carrying water collected from the Waverly District through the airport premises for discharge into Newark Bay.

5. Plaintiff operates a manufacturing plant at 768 Frelinghuysen Avenue in the City of Newark, within the Waverly District area intended to be served by said pumping station.

6. Subsequent to the commencement of the expansion of the airport facilities and following the construction of the pumping station, plaintiff's plant was flooded and substantially damaged on two different occasions, first in August 1967 and again in August 1971.

7. Plaintiff attributes the flooding and resultant damage to the alteration of the previously established Waverly District drainage pattern; to the clogging of the Waverly drainage ditch with debris allowed to accumulate by reason of inadequate maintenance; and to the failure by the city and the Port Authority to properly construct a pumping station with adequate capacity to serve the Waverly District.

8. Initially, plaintiff instituted this action against the city for damages caused by the flooding conditions and for a mandatory injunction seeking corrective action.

9. The city impleaded the Port Authority as a third-party defendant seeking contribution in the event the city was called upon to respond in damages.

10. Plaintiff now moves to amend its complaint in order to assert its claim for mandatory injunctive relief against the Port Authority. The Port Authority objects to the amendment against it on the grounds that it is immune from injunction suits except where brought by either the Attorney General of New Jersey or New York pursuant to the provisions of *N. J. S. A.* 32:1–161.

In this posture of the case, the Attorney General of New Jersey moves to intervene on behalf of the plaintiff with the express intendment that plaintiff's claim against the Port Authority may be heard on the merits, subject, however, to two qualifications: first, the Attorney General does not intend to conduct any discovery or require time to prepare for trial, and second, the Attorney General does not take nor will he take any position as to the merits of the case.

The Port Authority is "a body corporate and politic," *N. J. S. A.* 32:1-4, created by interstate compact between the States of New Jersey and New York, *N. J. S. A.* 32:1-1 *et seq.; McKinney's Unconsol. Laws of New York,* § 6401 *et seq.,* with the approval of Congress. 42 *Stat.* 174. It is fully owned by the compacting states, *Commissioner of Internal Revenue v. Shamberg's Estate,* 144 *F.* 2d 988, 1000 (2 Cir. 1944), *cert.* den. 323 *U. S.* 792, 65 S. Ct. 433, 89 L. Ed. 631 (1945), and has been variously defined as "an instrumentality or agency of the two states," *N. J. S. A.* 32: 1-25; *McKinney's Unconsol. Laws of New York,* § 6451, a joint agency of sovereign states, *Marmor v. Port of New York Authority,* 203 *Misc.* 568, 116 *N. Y. S.* 2d 177, 178 (Sup. Ct. 1952), and an arm and agency of both states. *Bush Terminal Co. v. City of New York,* 282 *N. Y.* 306, 26 N. E. 2d 269 (Ct. App. 1940); *Port of New York Authority v. J. E. Linde Paper Co.,* 205 *Misc.* 110, 127 *N. Y. S.* 2d 155, 158 (Mun. Ct. of City of New York 1954).

Prior to 1951 the Port Authority was cloaked with absolute sovereign immunity from suit. *Port of New York Authority v. Weehawkin Tp.,* 27 *N. J. Super.* 328, 333 (Ch. Div. 1953), rev'd on other grounds, 14 *N. J.* 570 (1954); *Trippe v. Port of New York Authority,* 14 *N. Y.* 2d 119, 249 N. Y. S. 2d 409, 198 *N. E.* 2d 585 (Ct. App. 1964). In that year, by joint enactment of the legislatures of both New York and New Jersey, see *McKinney's Unconsol. Laws of New York,* § 7101 *et seq.* and *N. J. S. A.* 32:1-157 *et seq.,* prospective consent to suits, actions or proceedings at law or in equity was given with one specific exception as contained in

*N. J. S. A.* 32:1–161 and its New York counterpart as follows:

The foregoing consent does .not extend to suits, actions or proceedings for judgments, orders or decrees restraining, enjoining or preventing the Port Authority from committing or continuing to commit any act or acts, other than suits, actions or proceedings by the Attorney-General of New York or by the Attorney-General of New Jersey — each of whom is hereby authorized to bring such suits, actions or proceedings in his discretion on behalf of any person or persons whatsoever who requests him so to do * * *.

Although the legislative history pertinent .to the waiver of the Port Authority's immunity from suit is meager, the intended purpose in preserving immunity· from injunction suits unless sanctioned by the Attorney General of either state is readily apparent and easily understood. As an instrumentality or agency of New York and New Jersey, the Port Authority was created to effectuate a mutual pledge of cooperation in the future planning and development of the port district. *N. J. S. A.* 32:1–25; *McKinney's Unconsol. Laws of New York,* § 6451. That development is not to be impeded or frustrated by injunction suits brought at the option of private party litigants for whatever reason to them seems proper. Manifestly, the Port Authority is not to be delayed in pursuit of its public mission, with the resultant diversion of its resources, time and attention, unless and until there has been an initial screening of the merits of an injunction suit by a responsible public official. Thus, the legislatures of New Jersey and New York have delegated to their respective Attorneys General the duty to screen proposed injunction suits with the discretionary authority to bring or institute such suits on behalf of any person or persons requesting them so to do. Their discretion is to be exercised with a view to the merits· of the controversy. Unless the Attorney General regards the suit as sufficiently compelling, the action is not to be instituted. This evident legislative policy accords with the judicial policy inherent in civil

court rules such as *R.* 1:4–8 and *Fed. R. Civ. P.* 11, both of which generally regard the signature of an attorney on a pleading brought by him as constituting a certification that to the best of his knowledge, information and belief there is good ground to support the pleading and that it is not interposed for delay. Any other construction of the parallel statutes would defeat their purpose and subject the Port Authority to a profusion of obstructive litigation, groundless or otherwise.

The courts view of *N. J. S. A.* 32:1–161 as above expressed harmonizes with the view expressed by the New York courts in *Lewis v. Lefkowitz,* 32 *Misc.* 2d 434, 223 *N. Y. S.* 2d 221, 223 (Sup. Ct. 1961), aff'd 17 *A. D.* 2d 778 (App. Div. 1962), and comports with the decree of the New Jersey Supreme Court in *Moonachie v. Port of New York Authority,* 38 *N. J.* 414 (1962), that:

Since the Authority is an instrumentality of New York and New Jersey, it is eminently desirable, of course, that the path of judicial decision in the courts of the two states be a common one. [at 425]

█ The qualifications or conditions interposed by the Attorney General on his motion to intervene in this action evokes these observations:

(a) The Attorney General has not initially brought this action on behalf of a person who requested him so to do.

(b) He seeks to intervene solely to provide a "vehicle" for plaintiff's assertion of a claim for injunctive relief against the Port Authority because he believes that a political subdivision of the State of New Jersey such as the Port Authority should be responsive to the public and because he believes plaintiff deserves "its day in court."

(c) He intends to take no position on the merits of the case.

(d) He will file no other pleadings and will take no further action with respect to the course or conduct of the litigation.

It is at once apparent that the Attorney General's proposed procedure would relieve a private litigant from the bar of the statute, delegate to that litigant the responsibility for the conduct of the injunction litigation, and at the same time remove himself from the merits of the controversy and from the effect his signature on the pleadings would have pursuant to *R.* 1 :4–8.

In the court's view such limited role on intervention would do violence to the legislative purpose which motivated the enactment of *N. J. S. A.* 32 :1–161. Totally lacking here is a positive position on the merits of the controversy. This is clearly called for by the initial screening process required by the Legislature when it reposed discretion in the Attorney General whether or not to bring an injunction suit on behalf of any person. Furthermore, bringing suit on behalf of a person implies that the Attorney General will be the moving party and will conduct the litigation in his own name. That element is likewise lacking. His participation, if any at all, will be minimal. In short, the Attorney General may not abdicate these responsibilities to a private litigant, although his motives be lofty, and still be in compliance with the statute.

█ Other arguments raised by plaintiff concerning the joinder of individual Port Authority commissioners as skirting the bar of the statute and the unconstitutionality of the statute itself are plainly without merit. Nor may it claim the right to sue for specific performance as a third-party beneficiary of a contract (lease) between the city and the Port Authority. At best plaintiff was an incidental beneficiary who acquired no enforceable rights under the lease. *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 *N. J. Super.* 370, 373 (L. Div. 1972) ; *Springfield Tp. v. N. J. Highway Dept.*, 91 *N. J. Super.* 567, 578 (L. Div. 1966).

For the foregoing reasons plaintiff's motion to amend its complaint to assert a claim for injunctive relief against the Port Authority and the motion of the Attorney General to intervene are denied.