Charlene M. Indelicato, Esq. Informal Opinion County Attorney No. 2003-14 County of Westchester Michaelian Office Bldg., Room 600 148 Martine Avenue, 6th Floor White Plains, New York 10601
Dear Ms. Indelicato:
You have inquired as to whether the County may issue bonds to finance the acquisition of property for the development of affordable housing, where, although a majority of the property will be used for affordable housing purposes, a portion will be leased for non-residential use by governmental, not-for-profit, or for-profit entities. We conclude that the County may do so.[1]
Background
In response to a request from your predecessor, we have previously concluded that Article XVIII of the State Constitution, which governs the provision of low-income housing, does not prohibit the involvement of counties in the development of affordable housing. Op. Att'y Gen. (Inf.) No. 92-4. We explained in this opinion that "a local law enacted by a county to provide needed low-income housing would serve a valid public purpose and is a proper exercise of local police power" granted by ArticleIX of the New York Constitution (the home rule article) and implemented by Municipal Home Rule Law § 10(1)(ii)(a)(12). We concluded that "counties can undertake significant programs in the provision of affordable housing which include, as possible components, county provision or acquisition of necessary land . . . and the financing of the costs of the affordable housing program consistent with general constitutional debt limitations." Id.
You have indicated that, pursuant to our previous opinion, the County has established a fund through which it has financed several housing projects for low-income families or other special needs populations. According to your letter, the County frequently issues bonds to finance the acquisition of property and subsequently transfers the property to a non-profit corporation or a for-profit developer for the establishment of affordable housing. The transfers have been accompanied by a covenant requiring that the property be used for affordable housing for a specified period of time, typically 40 years. To date, the property developed pursuant to the County's program has been for purely residential use.
The County has, however, identified several available properties that could be partially used for residential purposes, but, because of zoning restrictions or features of the property, cannot be used entirely for such purposes. Thus, the County is considering acquiring the property and, while requiring that a majority of the property be used for affordable housing, allowing the remainder of the property to be rented to lessees who would use it for non-residential purposes.
The proposed non-residential tenants include (1) governmental or not-for-profit entities that would provide services, such as child care or job placement services, to the residential tenants or the community at large, (2) governmental or not-for-profit entities that would use the property for purposes not directly related to the tenants or the community (e.g., general administrative offices), and (3) for-profit entities that would use the space for various purposes, e.g., retail or professional offices. You have indicated that, depending on the renting entity and the anticipated use of the space, the County may permit the tenant to pay below-market rent; for-profit entities, however, would be charged the market rent. The rental income earned from the non-residential tenants would be used to subsidize the affordable housing rental units.
Analysis
As we noted in Op. Att'y Gen. (Inf.) No. 92-4, a county's authorization pursuant to home rule powers to provide affordable housing must be read in conjunction with provisions of the State Constitution relating to local finances and debt limitations. These provisions prohibit the County from "giv[ing] or loan[ing] any money or property to or in aid of any individual, or private corporation or association, or private undertaking." N.Y. Const. Art. VIII, § 1. An incidental benefit to a private individual or entity does not invalidate an expenditure of public funds if a public purpose is primarily served by that expenditure. Murphyv. Erie Co., 28 N.Y.2d 80, 88 (1971). For the reasons discussed below, we are of the opinion that the County may proceed consistent with these restrictions.
The Court of Appeals has considered the question of whether property to be used for a public purpose does in fact serve that public purpose when it also has a commercial component. For example, in considering whether the condemnation of property amounted to an unconstitutional taking, the Court of Appeals in Courtesy Sandwich Shop, Inc. v. Port of New YorkAuthority, 12 N.Y.2d 379 (1963), concluded that the inclusion of commercial space in a building proposed to be built on the condemned land did not vitiate the public purpose for which the land was claimed. In that case, the Court upheld as constitutional a statute authorizing the Port of New York Authority to use portions of property acquired to develop the World Trade Center for the production of incidental revenue for expenses of all or part of that port development project. Specifically, the Court reasoned as follows:
 No further demonstration is required that improvement of the Port of New York by facilitating the flow of commerce and centralizing all activity incident thereto is a public purpose supporting the condemnation of property for any activity functionally related to that purpose. Nor can it be said that the use of property to produce revenue to help finance the operation of those activities that tend to achieve the purpose of the project does not itself perform such a function, provided, of course, that there are in fact such other activities to be supported by incidental revenue production.
Id. at 389. See also id. at 390-91 (holding that because the statute at issue "allow[ed] only `portions' of structures otherwise devoted to project purposes to be used for `the production of incidental revenue . . . for the expenses of all or part of the port development project,'" it did "not vitiate the public purpose of the development as a whole").
Similarly, in Bush Term. Co. v. City of N.Y., 282 N.Y. 306, 315-16
(1940), the Court concluded that property held by the Port Authority was held primarily for a public purpose when, of 16 stories, only the basement and part of the first story were used as a freight terminal and the remainder of the building was used for revenue-producing purposes. This was based on the apparent intent of the Legislature to confer upon the Port Authority the power to construct a building with additional space for rental, as well as the finding that construction of an inland terminal building by the Port Authority would have been economically impossible without the addition of upper stories that could be utilized to produce revenue. Id. at 315; see also Denihan Enter., Inc. v.O'Dwyer, 302 N.Y. 451, 458 (1951) ("Of course an incidental private benefit, such as a reasonable proportion of commercial space, is not enough to invalidate a project which has for its primary object a public purpose.").
In light of these decisions by the Court of Appeals, we conclude that the County's transfer of property to be developed for low-income housing, a portion of which property will be used for the production of incidental revenue, promotes the public purpose of providing affordable housing and thus is constitutional. Our opinion is, however, limited to the situation you have described, in which most of the property will be used for low-income residential purposes for at least 40 years, and all rental income derived from the leased portion of the property will be used to subsidize the residential rents by providing an income stream to help to maintain lower rents on the residential units.[2]
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
KATHRYN SHEINGOLD, Assistant Solicitor General
In Charge of Opinions
By: MELANIE OXHORN
Assistant Solicitor General
[1] You confirmed that the question you raise is whether the County's financing of the acquisition of property for transfer to a non-profit corporation or a for-profit developer for the development of affordable housing with a non-residential component serves a public purpose; it is not whether the mechanism for financing the acquisition is proper. Our opinion is thus so limited.
[2] You have also indicated that the County may permit tenants on the commercial portion of the property to be charged below-market rent. In prior opinions, we have interpreted section 1 of Article VIII to mandate that if such a lease is entered into, the consideration for the lease must be adequate, 1980 Op. Att'y Gen. (Inf.) 142, unless the below-market rent serves a public purpose. See 1979 Op. Att'y Gen. (Inf.) 60. Because the issue of whether the rent charged constitutes adequate consideration or serves a public purpose falls outside the scope of your request and involves facts not available to us, we do not address it here.