Frank S. McCullough, J.
The complaint in this action, as amended at the trial, seeks relief against the City of Yonkers under article 15 of the Real Property Actions and Proceedings Law, by a declaration and adjudication that the tax assessments of the City of Yonkers for the years 1959 through 1963 on plaintiff’s property were and are illegal and void and that the tax levied pursuant thereto should be cancelled and annulled.
By way of alternative relief, in the event the plaintiff is denied relief against the City of Yonkers, the plaintiff seeks judgment against the defendant, County of Westchester. The plaintiff contends that pursuant to a contract between the plaintiff’s predecessor in title and the County of Westchester, it was and is the duty of the County of Westchester to remove and discharge all incumbrances and tax liens. At the opening of trial the parties agreed that the court should try the case against the City of Yonkers first and make its determination on the first cause of action in which the City of Yonkers is the sole defendant, with the understanding that if the court found for the plaintiff, the case against the County of Westchester would become moot.
The subject premises were leased during the years in question as a parking lot area for the Cross County Shopping Center.
*628 The plaintiff has asserted four separate grounds in support of its position, each of which is predicated upon the theory that it was beyond the power and jurisdiction of the Tax Assessors to assess or tax plaintiff’s property and that the purported assessments were illegal and void. In substance, the grounds urged are as follows:
1. The assessment rolls of the City of Yonkers failed to properly identify the property assessed or to comply with the requirements of article 5 of the Real Property Tax Law (formerly Tax Law, art. 2) relating to mode of assessment and assessment procedure.
2. Plaintiff’s property (the parking lot area at the County Center) was, until July 29,1963, owned by a municipal corporation, namely, the County of Westchester, and held for a public use and consequently was exempt from taxation by virtue of section 406 of the Real Property Tax Law (formerly Tax Law, § 4, subd. 3).
3. Under chapter 679 of the Laws of 1961 plaintiff’s property constituted a park or parkland and as such, without regard to its use, was exempt from taxes and assessments.
4. Under agreement dated March 3, 1930, between the City of Yonkers and the Westchester County Park Commission, all property of the County of Westchester within the City of Yonkers was exempted from all future tax and assessment.
The evidence indicates that the plaintiff’s property was acquired from the County of Westchester by deed dated July 1, 1963. That deed described the property as Parcels 4, 5 and 5A on Map No. 12847. Said property consisted of approximately 10.64 acres within the corporate limits of the City of Yonkers.
Prior to the acquisition of said property by the plaintiff and during the period with which this action is concerned, title to the subject property was in the County of Westchester with the exception of Parcel 5, which was owned by the State of New York and conveyed to the County of Westchester immediately prior to the conveyance by the county on July 1, 1963, to the plaintiff.
During the years 1959, 1960, 1961 and 1962, and until July 29,1963, the tax assessment maps of the City of Yonkers showed that the aforesaid Parcels 4, 5 and 5A on Map No. 12847 were included within the tax lot designated as Block 9076, Lot 1, on the official tax map of the City of Yonkers.
On all of the assessment rolls of the City of Yonkers during the tax years 1959 to 1963, inclusive, the said Block 9076, Lot 1, was assessed against Cross County Parkway, Westchester County Park Commissiori a,nd was, totally exempt from taxation.
*629 On the tax-assessment roll for 1959, there appeared for the first time a parcel designated as Block 5170, Lot 200, which was assessed against “ 808 Central Pk. Ave. Cross Properties, Inc.” The same legend appeared on the assessment rolls for 1960, 1961, 1962 and 1963, with respect to the so designated Block 5170, Lot 200.
However, until the Fall of 1963, the so designated Block 5170, Lot 200, was not shown or delineated on any tax map of the City of Yonkers, nor during such periods of time was there any change or alteration in the area of lines of the tax lot known as Block 9076, Lot 1, on any of the tax maps of the City of Yonkers.
Parcels 4, 5 and 5A were part of Lot 1 of Block 9076, on the official tax map of the City of Yonkers during the period covered by this action.
However, the assessment rolls for the same period in addition to listing Lot 1 of Block No. 9076, also carried a listing of Lot 200 of Block 5170. Said assessment rolls listed the owner of Lot 200, Block 5170 as Cross Properties, Inc. This was obviously an error since the property at the time was not owned by Cross Properties, Inc. but by the County of Westchester.
The testimony indicates that the property purportedly included in Lot 200, Block 5170 could not possibly be specifically delineated on the official tax maps during the period in question. Ultimately, changes in the tax map to reflect the existence of Lot 200, Block 5170 were noted in September, 1963, as a result of a transfer in ownership of the subject parcel from the County of Westchester to the plaintiff.
It is the opinion of the court on the basis of the evidence adduced, that Lot 200 was in fact not legally in existence as a taxable parcel until after the changes on the tax map were effected in 1963. There was some evidence indicating notations on records prior to that date, but these notations are by their nature tentative and do not impress the court as having reflected the type of change that would create a taxable parcel. The court reaches this conclusion, in part, because of the impossibility of a specific delineation of Lot 200 on the tax maps prior to 1963. It appears that the boundaries and acreage of Lot 200, prior to 1963, were based on estimates and not specific delineations.
The Rules of the State Board of Equalization and Assessment set forth requirements for corrections of tax maps. The evidence indicates that these rules were not complied with during the subject period. The court is of the opinion that much of the confusion which surrounds this case arose out of the fact *630 that the City of Yonkers considered the plaintiff or its predecessor, Cross Properties, Inc., as the owner of the subject parcel, whereas, said plaintiff and predecessor had only leased the subject premises from the County of Westchester prior to the sale in 1963.
The court notes the decision in Hunt v. Dekin (187 Misc. 649, affd. 273 App. Div. 800, affd. 298 N. Y. 575); Matter of New York Cent. & Hudson Riv. R. R. Co. (90 N. Y. 342) and County of Westchester v. Village of Croton-on-Hudson (19 Misc 2d 512). In all of these cases the courts held assessments to be jurisdietionally defective and void for the reason that the description of the subject property in the assessment rolls did not state the boundary lines with sufficient particularity.
The court is further of the opinion that by reason of the fact that the subject parcel was owned during the period in question by a municipality, namely the County of Westchester, it was exempt for the additional reason that the property was held for a public use. The authority for exempting municipally owned property held for a public use from taxation appears in section 406 of the Real Property Tax Law. It is uncontroverted that the property was municipally held, but the issue of whether or not the use was public or private rests upon a determination of whether or not the particular parking lot use to which the subject property was subjected can fall within the definition of a public use.
The court notes that during the period in question there was no charge for parking irrespective of whether the individual car owners utilized the shopping center or not. Moreover, there was no restriction during the period in question as to the use of the premises by the public on Sundays and holidays.
The leading case on the question of “ public use ” is Town of Harrison v. County of Westchester (13 N Y 2d 258). In that case, it was determined that certain private airplane hangars leased by the County of Westchester to private companies were not held for a public use and were therefore subject to taxation. However, the court notes specifically that one of the hangars involved in the Town of Harrison case, namely Hangar B, was held in the lower court decision by Mr. Justice Hoyt to be exempt from taxation. The opinion in the Court of Appeals by Judge Fum noted that the decision by Mr. Justice Hoyt as to Hangar B was affirmed by the Appellate Division and Was not involved in the appeal before the Court of Appeals.
This court, therefore, considers significant the finding of Mr. Justice Hoyt in his decision in the Town of Harrison case *631 to be most applicable: 1 ‘ With respect to Hangar ‘ B the tenant agreed with the Operator to use the facilities demised to it for the operation of a flying school, the servicing and maintenance of aircraft, the operation of a charter service, to provide storage and parking of aircraft within the hangar, and to provide tie-down space outside the hangar. There is no evidence to indicate that any exclusive rights have been granted to any firm or individuals for the use or enjoyment of these facilities. It is, thus, proper to assume that these facilities are available to the public and used by the public. It is not difficult to distinguish between Hangars ‘ E ’ and 1 D ’ on the one hand and Hangar ‘ B ’ on the other hand. The facilities of Hangar ‘ B ’ are enjoyed by and are available to the public. The public may avail itself of flying instructions, charter service and parking and maintenance of aircraft. No arrangements have been made with select firms, individuals or corporations, to give them any exclusive rights to these facilities. The use of Hangar ‘ B ’ is determined to be public and it is thus exempt from tax.” (34 Misc 2d 1020, 1034-1035.)
Thus, Hangar B, although leased by the county to a private corporation, was, nevertheless, found to fit within the description of a “ public use ” and therefore exempt from taxation.
This court is of the opinion that the parking lot used for the Cross Comity Shopping Center during the period in question and by reason of the manner in which said parking lot was available to the public, also constituted a public use and was thereby exempt from taxation pursuant to the provisions of section 406 of the Real Property Tax Law.
There was substantial testimony adduced upon the trial indicating that the parking lot area was always open, was acceptable to public transportation conveyances, carried no charge nor validation and was also available for various civic organizations and churches without charge.
Even though a shopping center of the magnitude of the Cross County Shopping Center constitutes a mammoth combination of retail business enterprises, this court nevertheless is of the opinion that the parking lot use accessory to this shopping center, based on present-day standards and practices, represents a public use, municipally owned.
For the foregoing reasons, the court grants judgment to the plaintiff for the relief prayed for in the first cause of action.
In view of the court’s decision with respect to the two grounds discussed herein, namely the invalid attempt at assessing the subject property, and the application of section 406 of the Real *632 Property Tax Law, the other grounds urged by the plaintiff need not be considered. All motions upon which decision was reserved are denied. This opinion may be considered the decision of the court pursuant to CPLR 4213 (subd. [b]).
Counsel may obtain exhibits in chambers.