VILLAGE OF WATKINS GLEN, Plaintiff, *v.* C. EARLE HAGER, Schuyler County Treasurer, and Others, Defendants.

Supreme Court, Schuyler County, July 16, 1931.

*Harold H. Cassidy,* for the plaintiff.

*Arthur R. Ellison,* for the defendant C. Earle Hager, as Schuyler county treasurer.

*Olin T. Nye,* for the defendant Laura Leslie, as collector of town of Reading, and all other defendants.

McNAUGHT, J. The plaintiff, village of Watkins Glen, was incorporated by the Legislature under a special act, being chapter 36 of the Laws of 1918. The act of incorporation (Tit. 2, § 5) provides the territory shall continue to be a municipal corporation and " shall have power to hold, purchase and convey such real and personal estate as the purposes of the corporation may require." It is also provided in title 4, relating to the board of trustees, its powers and duties, that such trustees have power to provide for the preservation of shade and ornamental trees in and upon the parks, public grounds and streets, to provide for the making and preservation of fences around the parks and public grounds of said village, and to prevent any injury to the parks or other public grounds in said village, and to provide for the improvement, adorning and beautifying of the same. (§ 26, subds. 28, 29, 30.) No other provisions relating to parks, public grounds or the acquisition of real property are contained in the special act of the Legislature incorporating the plaintiff.

The name of plaintiff in chapter 36 of the Laws of 1918 appears as " Village of Watkins." The title was changed by chapter 550 of the Laws of 1926 to " Village of Watkins Glen."

A village incorporated under a special law and each officer thereof possesses all the powers and is subject to all of the liabilities and responsibilities conferred or imposed upon a village or such officer by the Village Law, not inconsistent with such special law. (Village Law, § 380.)

Under subdivision 1 of section 1-a of article 1-A of the Village Law (as added by Laws of 1927, chap. 650) a village has power " To take, purchase, hold, lease, sell and convey such real and personal property as the purposes of the corporation may require." By subdivision 2, power is vested " To take by gift, grant, bequest and devise and hold real and personal estate absolutely or in trust for any public use including that of education, art, ornament, health,

charity or amusement, for parks or gardens, or for the use or erection of statues, monuments, buildings or structures, upon such terms or conditions as may be prescribed by the grantor or donor and accepted by said corporation and to provide for the proper administration of the same."

The board of trustees of a village may accept by grant or devise a gift of land for a public park, square, athletic field or playground, and likewise may accept a gift by bequest, grant or devise of a site or building, or both, for municipal purposes. (Village Law, § 169, as amd. by Laws of 1930, chap. 851, and § 169-a, as added by Laws of 1915, chap. 392.)

The conveyance to the plaintiff from the Magee heirs was without restriction or reservation " to use the same, or the avails therefrom, for municipal purposes, and for the use, benefit and enjoyment of the people of the said village." The power of the plaintiff, acting through its board of trustees, to acquire the property now the subject of controversy, is amply sustained by statutory provision. It must have been acquired, however, for an authorized statutory purpose. When acquired, it necessarily follows it should be devoted to such purpose.

All real property is subject to taxation for the support of government, except as the same is exempted from taxation by the provisions of section 4 of the Tax Law (as amd.). Subdivision 3 of such section, enumerating property exempt from taxation, provides: " 3. Property of a municipal corporation of the state held for a public use, * * * except the portion of municipal property not within the corporation."

It appears that since its acquisition by the plaintiff, the Magee property has not been used for any general public purpose, or so operated that the same was utilized for the benefit and enjoyment of the people of the village of Watkins Glen. A small parcel of the property has been sold and conveyed by the village. Some revenue has been derived from the rental of some of the small houses located upon the property, and from portions rented for garden purposes. The income has been paid into the village treasury. Some slight improvements have been made to rented property. A conservatory has been removed. Some obsolete fire apparatus and a few other discarded implements of the highway department have been stored in the barn upon the premises. For a short period a troop of Boy Scouts of Watkins Glen was permitted to use some portion of the property for meeting purposes. The residence, or Magee homestead, has not been used and is rapidly depreciating and becoming unfit for use. The buildings are locked. Gates of entrance are also locked.

No issue is raised as to the regularity of the assessment, the levy of taxes, the warrant, the return, the tax sale, or the certificate issued by the county treasurer. The sole question for determination is whether the property is held for a public use. If the property is held for a public use in the manner and for the purposes specified by law and within the meaning of such term in subdivision 3 of section 4 of the Tax Law, being all located within the corporate limits of the plaintiff village, it is exempt from taxation, and the assessment, levy, tax sale and certificate are without authority, invalid and void. If, however, the property is not held for a public use within the meaning of the statute, the property is not exempt from taxation, and the assessment, levy and sale were valid.

Real property owned by municipal corporations and not held for public purposes, is taxable. (*Clark* v. *Sprague, No. 2*, 113 App. Div. 645, 646.)

A distinction has existed and was early recognized in this State, between the ownership by a municipality of property for public or governmental purposes, and for purely private or commercial purposes. (*Clark* v. *Sprague, supra*, citing *Bailey* v. *Mayor*, 3 Hill, 531, and *Lloyd* v. *Mayor*, 5 N. Y. 369.)

The rule that statutes exempting property from taxation are to be strictly construed has long been so firmly established as scarcely to need reference to authority. (*People ex rel. S. Bank* v. *Coleman*, 135 N. Y. 231, 234; *People ex rel. Mizpah Lodge* v. *Burke*, 228 id. 245.)

Where exemption has been claimed, it has been specifically held that the property claimed to be exempt must be used for the purpose which entitles it to exemption. If it is idle or unused, it is not entitled to exemption under the statute. (*People ex rel. Blackburn* v. *Barton*, 63 App. Div. 581; *People ex rel. Missionary Sisters* v. *Reilly*, 85 id. 71; affd., 178 N. Y. 609; *Young Women's Christian Assn.* v. *City of New York*, 217 App. Div. 406; affd., 245 N. Y. 562.)

Undoubtedly it is the general rule, as well as the statutory provision, that the property of a municipality used for public purposes is exempt from taxation. Whether in this State a distinction exists between property which it is claimed has been acquired for a public purpose and such as is not strictly so held, was discussed, but not decided, in *People ex rel. Mayor* v. *Assessors* (111 N. Y. 505).

It has been held in many cases in other jurisdictions that the exemption is limited to property actually devoted to a public use, or to some purpose or function of government. (*Town of Hamden*

v. *City of New Haven*, 91 Conn. 589; *City of Traverse* v. *East Bay Township*, 190 Mich. 327; *Essex County* v. *Salem*, 153 Mass. 141; *Atlantic & N. C. R. R. Co.* v. *Bd. of Com'rs of Carteret County*, 75 N. C. 474.)

The specific question here involved has not been directly decided in the courts of this State, except as the principle was passed upon in *Clark* v. *Sprague* (*supra*). It is manifest that there are two classes of property of a municipal corporation exempt from taxation. The *first* is that class of property held for a public use, in that it is used in connection with the operation of the functions of government, such as municipal buildings; *second*, that class of property held for a public use, in that it is for the benefit of the people for their free use and enjoyment, such as parks, playgrounds, athletic fields, art museums, and public uses of a similar nature.

When the municipal corporation, however, acquires and holds property without devoting the same to either class of purpose, it is simply held without use. The fact that it is to a certain extent used for the purposes of producing income when there is no definite plan evolved for its use by or for the public, cannot reasonably be said to constitute holding for a public use. If property is held for a public use it must be used for the public benefit, devoted to some public purpose, and operated and maintained in the interest of the public health, education, amusement or other specified statutory purposes. When it is held in practically a private capacity, when no use is made of it for the benefit of the people, when the sole acts of the public authorities in relation to it are to rent small parcels and exclude the public by locked gates, such property is not held for a public use within either the letter or the spirit of the statute exempting the same from taxation.

The record fails to disclose any act by the village authorities, any proposed or contemplated public use, any plan or method of utilizing the property in question, " for the use, benefit and enjoyment of the people of the said village and its successors," or for any " municipal purpose."

Clearly an exemption of municipal property held for a public use does not contemplate that a municipal corporation may acquire property, use or neglect to use it the same as an individual, and be entitled to exemption from taxation because it claims the property is " held for a public use " to be determined or decided in the future.

The plaintiff has failed to establish facts sufficient to constitute a cause of action.

The motion to dismiss the complaint is granted with one bill of costs. Submit findings and judgment accordingly.