ERIE COUNTY WATER AUTHORITY, Petitioner, *v.* COUNTY OF ERIE et al., Respondents.

Fourth Department, February 28, 1975.

*John P. Noble (Nicholas Konst* of counsel), for petitioner.

*James L. Magavern, County Attorney (Martin A. Schnorr* of counsel), for County of Erie and others, respondents.

*Peter D. Cook (Joseph G. Sacco* of counsel), for Town of Tonawanda and others, respondents.

*Norton, Norton & Radin (Martin A. Schnorr* of counsel), for Kenmore-Town of Tonawanda Union Free School District, respondent.

SIMONS, J.   Petitioner is a public authority created for the purpose of constructing and operating a public water supply system within the territorial limits of Erie County, exclusive of the City of Buffalo and the Town of Tonawanda (Public Authorities Law, §§ 1050 — 1073).   In 1971 it purchased 27.69 acres of real property in the Town of Tonawanda for possible use in the expansion of its facilities.   The sale was subject to an existing lease-back to a private corporation.   The authority contends that the property was tax exempt and is before us challenging the action of the County Legislature in placing the property on the assessment rolls.   The respondents, various taxing bodies and officials in Erie County, maintain that the property was subject to real property tax assessment since it was not devoted to a public purpose.

The litigation was incorrectly commenced as an article 78 proceeding and referred to this court by Special Term.   Since we have jurisdiction of the parties and the subject matter, we treat the case as an action for declaratory judgment (CPLR 103; *Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.,* 29 A D 2d 1042, mod. 24 N Y 2d 400; *Matter of Hospital Tel. System* v. *New York State Tax Comm.,* 41 A D 2d 576; cf. *Matter of Watchtower Bible & Tract Soc.* v. *Lewisohn,* 35 N Y 2d 92), and one not time barred since it questions the jurisdiction of the respondents to tax the water authority's property (*Buffalo Hebrew Christian Mission* v. *City of Syracuse,* 33 A D 2d 152).

In 1971 the authority owned and operated 17 pumping stations and two water treatment plants.   The subject property was a proposed site for a new treatment plant and two pumping stations: one to pump water from the Niagara River into the proposed plant for treatment and the second to pump treated water from the plant into the authority's distribution lines.

Acquisition of the real estate was authorized by a resolution of the authority dated April 27, 1971 and the transfer was completed May 15, 1971. The stated purchase price of $479,127 was paid as follows: $164,563.50 each to Keps Properties, Inc., and Mek Ventures, Inc., grantors, and $150,000 to Stelco, Inc., the tenant and owner of one of the buidings on the site.

Prior to the sale the property was occupied by Stelco, Inc. under a lease dated June 1, 1969. This lease was renegotiated and a new lease executed on April 23, 1971, before the transfer to the authority, and the sale was made subject to the new lease. By the terms of Stelco's renegotiated lease the tenant was granted a one-year term and options to renew for 10 successive one-year terms, the first to be exercised on June 1, 1972. The new landlord (the authority) was granted the right to cancel the lease after expiration of the second renewal period, i.e., June 1, 1974, upon one-year prior written notice to Stelco and payment of $15,000 to the grantors. After expiration of the third renewal period, i.e., June 1, 1975, the lease could be canceled upon one-year notice without payment of liquidated damages. The rent for the lease was $15,000 per annum, net to the tenant, and was reserved to the grantors until May 31, 1975. The authority canceled the lease on April 23, 1973, effective May 31, 1974, and paid the required $15,000 penalty. The total consideration received by the grantors for sale of the property, therefore, was the stated purchase price of $479,127 plus $60,000 in the form of rent reserved and the liquidated damages required by the terms of the lease. The authority had no right of entry under the terms of the lease or the deed (except in case of default or waste) until June 1, 1974, three years after the purchase. The authority's engineers made test borings of the soil in October, 1972, apparently at the sufferance of the tenant.

The final decision to use this site for a treatment plant, in preference to another under consideration, was not made until December 12, 1972, some 18 months after the purchase. The preliminary design and report for the improvement was submitted to the authority for review in January, 1973. The engineer estimated that preparation of the final design and construction would require approximately four additional years, although the authority maintains the project is to be completed by 1975.

Upon these facts and construing the applicable statutes broadly, the authority claims tax exemption for this property from the date of purchase in 1971. To put it plainly, the substance of its position is that it could sell its tax exemption to its grantors by use of this lease-back arrangement in exchange

for consideration in the form of a reduced purchase price until its expansion plans were complete. We disagree.

All real property within the State is subject to real property taxation unless exempt by law (Real Property Tax Law, § 300). Statutes granting tax exemption are strictly construed against the taxpayer, but a construction so literal and narrow that it defeats the exemption's settled purpose is to be avoided (*Matter of Association of Bar of City of N. Y. v. Lewisohn,* 34 N Y 2d 143, 153; *People ex rel. Untermyer* v. *McGregor,* 295 N. Y. 237; *County of Herkimer* v. *Village of Herkimer,* 251 App. Div. 126, affd. 279 N. Y. 560).

The real property of public authorities is exempt as provided in the Public Authorities Law (Real Property Tax Law, § 412) and the Erie County Water Authority's claimed exemption derives from section 1063 of the Public Authorities Law. The latter section provides that the authority shall "pay no taxes or assessments upon any of the properties acquired by it or under its jurisdiction or control or supervision or upon its activities." The broad sweep of that language is narrowed by subdivision 7 of section 1051, which defines "properties" as "the water supply and distribution system" and any other property "incidental to and included in such system." The statute declares that the purposes of the authority are "public purposes" (Public Authorities Law, § 1053, subd. 4) and that the authority and "the carrying out of its corporate purposes * * * is a public purpose" (Public Authorities Law, § 1063, subd. 1). It is the contention of the authority that the statute's language is all-inclusive, that since the authority is empowered to purchase real property, including interests therein, for its corporate purposes (Public Authorities Law, § 1054, subd. 6) all property owned by it is exempt from taxation.

Generally, however, ownership by one specified by the Legislature as entitled to exemption, standing by itself, is not sufficient to qualify property as tax exempt. The property must also be used for a purpose recognized by the Legislature as qualifying for tax exemption (see Real Property Tax Law, art. 4 generally). In the case of public property it has been said that: "Property held by an agency of the State is ordinarily immune from taxation only while it is used for a public purpose. Property used primarily to obtain revenue or profit is not held for a public use and is not ordinarily immune from taxation, but property held by a State agency primarily for a public use does not lose immunity because the State agency incidentally derives income from the property [citations omitted]" (*Bush Term. Co.* v. *City*

*of New York,* 282 N. Y. 306, 321). Indicia of the legislative intent to limit the exemption on property held by a public owner may be found in express statutory language (e.g., Real Property Tax Law, § 406, subd. 1; see *Town of Harrison* v. *County of Westchester,* 13 N Y 2d 258; *Matter of Oak Is. Beach Assn.* v. *Mascari,* 47 Misc 2d 21, affd. 25 A D 2d 496, affd. 18 N Y 2d 861; *County of Herkimer* v. *Village of Herkimer, supra; Village of Watkins Glen* v. *Hager,* 140 Misc. 816, affd. 234 App. Div. 904) and in language limiting the use exclusively to the purposes of the particular owner granted the exemption (e.g., Real Property Tax Law, §§ 410, 416; *People ex rel. Commissioners* v. *Sancomb,* 259 N. Y. 1).

In the case of a public authority, the qualifying use is limited to the proper purposes of the authority as revealed in the statute creating it. The Legislature's broad declaration that the authority shall pay no taxes or assessments upon its property and that the carrying out of its corporate purposes is a "public purpose" is self-limiting and must be construed by examining the activities of the authority, determining whether the questioned property is used in carrying out the corporate purposes and is "incidental to and included in" the supply and distribution system.

It is self-evident that property may be held for a public use during the period of delay and nonuse occasioned by the planning and development of public facilities (*Matter of Kearney* v. *City of Schenectady,* 37 A D 2d 896; cf. *Long Is. Research Bur.* v. *Town of Hempstead,* 283 App. Div. 663, affd. 308 N. Y. 818). By themselves such delays do not destroy an exempt purpose of the owner (cf. *Matter of Faculty-Student Assn.* v. *Sharkey,* 35 A D 2d 161, affd. 29 N Y 2d 621; *Board of Foreign Missions of M. E. Church* v. *Board of Assessors,* 244 N. Y. 42, 48; Property Tax Exemption — Prospective Use, Ann. 54 ALR 3d 9, 89–90). This property, however, was not idle for purposes of planning and development — it was not used by the authority because the exclusive right to possession rested with the tenant for at least three years by the terms of the lease. During that time, the property was used not for public purpose but for a commercial purpose entirely unrelated to the water system. If the authority had received rent from the tenant during the three years rather than receiving consideration in the form of a lower sale price, or if the property had been retained by the grantors for three years, subject to an option to purchase not exercisable before June 1, 1974, then without doubt the property would have been subject to assessment and tax. There is little difference here.

Our courts have consistently distinguished between profits earned incidentally by an exempt owner when he uses his property for the purpose recognized by the statute granting exemption (e.g. *Bush Term. Co.* v. *City of New York*, 282 N. Y. 306, *supra; People ex rel. Watchtower Bible and Tract Soc.* v. *Haring*, 8 N Y 2d 350) and profits earned by an exempt owner by renting the property to a nonqualifying tenant for the tenant's use (e.g., *Town of Harrison* v. *County of Westchester*, 13 N Y 2d 258, *supra; County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126, affd. 279 N. Y. 560, *supra; Board of Foreign Missions of M. E. Church* v. *Board of Assessors, supra;* Tax Exemption — Availability to Lessee, Ann. 54 ALR 3d 402). It is not sufficient that there is a consequential benefit to the owner from renting the property which is applied to the owner's exempt purposes (see *Matter of Genesee Hosp.* v. *Wagner*, 47 A D 2d 37). To avoid loss of the exemptions, the use must be directly related to the owner's purpose.

This real estate was not used for the purposes of the authority and it was not property incidental to and included in the water system because it was beyond the power of the authority to bring it within the system until it acquired the right to possession. The contention that the authority did not need the land during the time of the lease is beside the point. It owned the land, and it devoted it to a nonexempt purpose and thereby lost the benefit of its statutory exemption.

In short, when the property was devoted to the purposes of the authority, it was entitled to tax exemption. That time was not the date that title was acquired because, although the property may have been acquired for public purposes, it was neither used nor available for those purposes until June 1, 1974. Until that date it was not entitled to the exempton.

The property was marked exempt on the tax rolls in June, 1971 at the request of the authority. In December, 1972 the County Legislature lawfully restored it to the assessment rolls for the preceding and future years until petitioner took possession of the property on June 1, 1974 (Real Property Tax Law, § 551)

Judgment should be entered declaring the property to be subject to assessment and taxation during the period it was owned by the Erie County Water Authority prior to June 1, 1974.

MARSH, P. J., MOULE, DEL VECCHIO and WITMER, JJ., concur.

Judgment unanimously granted in favor of respondents without costs, in accordance with opinion by SIMONS, J.