ERIE COUNTY AGRICULTURAL SOCIETY, Appellant, v GEORGE L. CLUCHEY, as Assessor of the Town of Hamburg, Respondent.

Fourth Department, July 18, 1975

*Falk, Siemer, Glick, Tuppen & Maloney (Edward Siemer* of counsel), for appellant.

*Walter L. Rooth (Francis X. Murphy* of counsel), for respondent.

SIMONS, J. This proceeding, brought pursuant to article 7 of the Real Property Tax Law, again presents the question of what use an exempt corporation may make of real property extraneous to its purposes without losing its real property tax exemption. In this case petitioner, Erie County Agricultural

Society, has leased a portion of its property to the Buffalo Trotting Association to be used exclusively by the association except during the 9 days per year required for the county fair, an additional 12 days for preparation before the fair and 7 days for cleanup afterwards. Respondent assessor included the leased premises on the 1974–1975 tax roll and petitioner brought this proceeding, claiming that the real property was exempt from taxation and, in the alternative, that the assessment was illegal for inequality and overvaluation. Petitioner's motion for summary judgment based upon the exemption provided in section 450 of the Real Property Tax Law was denied by Special Term. On this appeal both parties concede that the right to exemption is a question of law not requiring a trial.

Petitioner's property consists of 215 acres of land on which are located 66 permanent buildings, including 26 barns and buildings devoted to exhibiting and housing animals, 12 buildings for additional fair exhibits of farm machinery, health, conservation and the like and 12 buildings devoted to fair administration, e.g., a power house, police headquarters, superintendent's residence, depots, rest rooms, a United States Post Office and general offices. In addition there are substantial improvements devoted to entertainment and these are principally related to the race track and include the grandstand, clubhouse and kitchen facilities. The lease rents all of petitioner's premises to Buffalo Trotting Association except 10 of the 66 buildings, i.e., "the new Industrial Building, the one-half of cattle barn No. 4 presently used by Landlord, Bazaar, Education, Women's, Firemen's, Grange, Conservation and Agricultural Buildings, Superintendent's dwelling, such part of barn No. 3 as is used by the Landlord for shop and storage purposes, any offices in the grandstand used by the Landlord, and any buildings which may hereafter be erected by the Landlord for Fair purposes".

The property has been continuously owned by petitioner for 105 years. The premises are leased to the Trotting Association to be used and occupied for commercial harness horse races for a term of 20 years, from 1962 through 1981 and this leasehold is reserved to petitioner only for the four-week period of the fair each August. Significantly, this results in no inconvenience to petitioner for the simple reason that its administrative and planning operations do not require use of the demised premises and they have no utility to it except

during the period of the fair. While all the facilities are used at fair time each year, those leased to the Trotting Association are necessary for exhibition purposes only during August. It has been an agreeable arrangement, for petitioner has profited by annual rent receipts based upon the retained percentages and breaks in the betting handle and by the three million dollars in improvements added to the premises by the Trotting Association.

It is familiar law that exemptions are entirely matters of legislative grace. Each exemption statute must be construed strictly against the taxpayer but a construction so literal and narrow that it defeats the statute's purpose is to be avoided (*Matter of Association of Bar of City of N. Y. v Lewisohn*, 34 NY2d 143, 153; *Erie County Water Auth. v County of Erie*, 47 AD2d 17). The pertinent statute in this case is section 450 of the Real Property Tax Law which provides: "Real property owned by an agricultural society and *permanently used by it for exhibition grounds* shall be exempt from taxation and exempt from special ad valorem levies and special assessments to the extent provided in section four hundred ninety of this chapter" (L 1958, ch 959; emphasis added).

The statute has not been construed by the courts and over the years conflicting interpretations of it have been issued by various State agencies (see 2 Op Counsel SBEA No. 2-70 denying exemption, and compare with 1953 Opns Atty Gen 207; 56 N Y St Dept Rep 72; 1927 Opns Atty Gen 154, all recommending exemption, despite nonexhibition, though not necessarily nonagricultural, uses; for cases from other jurisdictions, see Tax Exemption-Agricultural Fairs, Ann 89 ALR2d 1104, 1110–1113). The section's unusual text apparently emanated from a 19th century desire on the part of the Legislature to support and encourage permanent agricultural fairs in a rural economy.

Petitioner claims tax exemption for all its property contending that under the terms of the statute permanent ownership is the sole requirement for exemption and that it need only demonstrate yearly, not year-round, use to qualify. If that be true, certainly 105 years of continuous ownership evidences the necessary degree of permanency. However, the necessity of year-round use is not in question. The issue is what unrelated uses may be permitted without loss of the exemption.

Under New York law the right of real property to be exempt from taxation is predicated upon a two-pronged test

involving ownership and use. In *Erie County Water Auth. v County of Erie* (47 AD2d 17, 20–21, *supra)* we stated the controlling principles: "Generally, however, ownership by one specified by the Legislature as entitled to exemption, standing by itself, is not sufficient to qualify property as tax exempt. The property must also be used for a purpose recognized by the Legislature as qualifying for tax exemption (see Real Property Tax Law, art 4 generally). In the case of public property it has been said that: 'Property held by an agency of the State is ordinarily immune from taxation only while it is used for a public purpose. Property used primarily to obtain revenue or profit is not held for a public use and is not ordinarily immune from taxation, but property held by a State agency primarily for a public use does not lose immunity because the State agency incidentally derives income from the property [citations omitted]' *(Bush Term. Co. v City of New York,* 282 NY 306, 321). Indicia of the legislative intent to limit the exemption on property held by a public owner may be found in express statutory language (e.g., Real Property Tax Law, § 406, subd 1; see *Town of Harrison v County of Westchester,* 13 NY2d 258; *Matter of Oak Is. Beach Assn. v Mascari,* 47 Misc 2d 21, affd 25 AD2d 496, affd 18 NY2d 861; *County of Herkimer v Village of Herkimer, supra* [251 App Div 126, affd 279 NY 560]; *Village of Watkins Glen v Hager,* 140 Misc 816, affd 234 App Div 904) and in language limiting the use exclusively to the purposes of the particular owner granted the exemption (e.g., Real Property Tax Law, §§ 410, 416; *People ex rel. Commissioners v Sancomb,* 259 NY 1)."

The language of section 450 carries its own limitation by referring to use of the property for exhibition grounds. Commercial horse racing is not related to petitioner's activities or connected with the entertainment or educational programs of the fair. Once the property was leased to the Trotting Association the use far exceeded a casual or incidental departure from the statutory requirements, for it permitted a commercial use of a substantial portion of the premises for 20 years. Petitioner's construction of the statute recognizing the single test of permanent ownership would allow "any use" of the premises as long as the title remained in petitioner's name no matter how commercial or how unrelated to the exempt purposes of the owner that use might be. That argument runs counter to significant recent efforts to broaden the real prop-

erty tax base (see, e.g., *Matter of Hellerstein v Assessor of the Town of Islip,* 37 NY2d 1, decided June 5, 1975; *Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, *supra).* We do not believe the Legislature intended such a result.

It is interesting to note that the statute regarding incorporation of agricultural and horticultural societies provides for the creation of a quasi-public entity: there can only be one county agricultural corporation in each county; the agricultural corporation is allowed to appoint its own police force; a Justice of the Peace may hold a court of special sessions upon the fairgrounds; the corporation must hold an annual fair; and no license fees shall be collected for any exhibition or entertainment held on the grounds of an agricultural corporation whether or not the corporation derives a pecuniary profit therefrom by lease of its grounds for such purpose.

Without pressing the analogy unreasonably and recognizing the differing statutory provisions, it seems inconsistent to permit a quasi-public agricultural society to maintain its tax exemption on this single requirement of permanent ownership when all other public agencies, including the State, must additionally establish that the land is held for a public purpose (see Real Property Tax Law, § 406, subd 1; *Town of Harrison v County of Westchester,* 13 NY2d 258; *Matter of Oak Is. Beach Assn. v Mascari,* 47 Misc 2d 21, affd 25 AD2d 496, affd 18 NY2d 861; *Village of Watkins Glen v Hager,* 140 Misc 816, affd 234 App Div 904).

Finally, petitioner suggests that the legislative design is revealed by reference to sections 1 and 2 of chapter 148 of the Laws of 1952, as amended, which authorize the town to levy admission taxes on harness horse races in which the site and facilities of the meeting are leased from a tax exempt organization.* Petitioner contends that by means of this impost there is a complete scheme of taxation which protects both the fair and the town treasury; the town may tax either the goose or the golden eggs, but not both, because once the real property tax is assessed the power to levy an admissions tax apparently is lost. Whatever the effect of those sections may be, the decision is one for the town fathers and one which is irrelevant to construction of the exemption of the statute.

---

* An examination of the bill jackets and legislative correspondence reveals that this legislation was passed with petitioner specifically in mind. It applies to no other fair ground.

Petitioner objects to the assessor's division of the whole parcel into exempt and nonexempt property. The statute provides for partial exemptions and while adjustments may be required in the allocation of various parts of the property as exempt or nonexempt we find no fault in the procedure (Real Property Tax Law, § 502, subd 2; *Matter of Trustees of Sailors' Snug Harbor v Tax Comm. of City of N. Y.*, 26 NY2d 444).

The order of Special Term should be modified to grant partial summary judgment to respondent declaring the real property subject to the lease between petitioner and the Buffalo Trotting Association subject to real property taxes. Summary judgment was otherwise properly denied, since a trial is required to resolve the issue of whether the assessment is illegal because of inequality or overvaluation.

MARSH, P. J., CARDAMONE, GOLDMAN and WITMER, JJ., concur.

Order unanimously modified on the law in accordance with opinion by SIMONS, J., and as modified affirmed, without costs.