In the Matter of the COUNTY OF ERIE, Respondent, v HARRY W. KERR et al., Constituting the TOWN OF ORCHARD PARK BOARD OF ASSESSMENT REVIEW, et al., Appellants.

Fourth Department, October 24, 1975

*Francis J. Busteed, Jr.,* for Harry W. Kerr and others, appellants.

*Williams, Stevens, McCarville & Frizzell, P. C. (Terrance McCarville* of counsel), for Orchard Park Central School District, appellant.

*James L. Magavern (Leonard Kriss* of counsel), for respondent.

CARDAMONE, J. In an article 78 proceeding, petitioner-respondent County of Erie sought an order annulling and setting aside a ruling made by the respondent-appellant Town of Orchard Park that Rich County Stadium, owned by petitioner, is subject to real property taxation. Special Term granted petitioner's application and ordered that the actions of the Town of Orchard Park Board of Assessment Review and the Town Assessor insofar as they attempted to impose real estate tax charges against the stadium properties be declared null and void, that respondents remove the parcels of land on which Rich Stadium and its ancillary facilities are located from the Town of Orchard Park tax rolls and that respondent and intervenors-respondents-appellants, Orchard Park Central School District, be enjoined and prohibited from collecting any real estate or school taxes on said property for the tax years 1974 and 1975.

Petitioner claims tax exemption pursuant to subdivision 1 of section 406 of the Real Property Tax Law, contending that Rich Stadium is a municipally owned facility devoted to the public use. Appellants allege that Rich Stadium as operated and used under the existing exclusive leasehold arrangement vitiates any public purpose which was originally contemplated by the parties and renders the property taxable. The question presented therefore is whether Rich County Stadium is tax exempt under subdivision 1 of section 406 of the Real Property Tax Law as property "held for a public use".

The parties agreed that there was no factual issue which necessitated a hearing. In May, 1968 the New York State Legislature authorized the construction, financing and exclusive leasing of a stadium in Erie County (L 1968, ch 252). The Legislature declared that the use and occupation of such a stadium was deemed to be in the public interest and for the benefit of the people of the county and for the "improvement of their health, education, welfare, recreation, well-being and prosperity, for the promotion of competitive sports for youth and the prevention of juvenile delinquency, and for the advancement and improvement of trade, industry, science, agriculture and commerce, and [they] *are hereby declared to be*

*public purposes* for which county moneys may be appropriated and expended" (L 1968, ch 252, § 2; emphasis added). Thereupon, the Erie County Legislature adopted a resolution authorizing issuance of bonds in the amount of $50,000,000 to finance construction of a domed stadium. The county, pursuant to said authority, entered into certain agreements with Kenford Company to lease and/or manage the operation of the stadium to be constructed. A complaint was brought seeking to enjoin the county from making public expenditures for the stadium and from permitting the stadium to be operated by noncounty employees. The court action culminated when the Court of Appeals found that "[i]t was perfectly reasonable for the county to conclude not only that it needed professional help in the complex running of a multi-million dollar, multi-purpose public arena but that it should arrange to employ the only company with experience in the field either as lessee or manager". The court further found it irrelevant that the county itself was not operating the stadium "for it is evident that the county's residents will be obtaining the full benefit for which the stadium is intended * * * regardless of the identity of the party operating the stadium" *(Murphy v Erie County,* 28 NY2d 80, 87). It affirmed the dismissal of the complaint on the merits, believing that the fact that Kenford would derive a benefit from the arrangement with the county was not controlling since Kenford's benefit was only incidental to the very public purpose for which the stadium was authorized (28 NY2d 80, affg 34 AD2d 295).

Thereafter, negotiations broke down between the county and Kenford Company. The county, however, went ahead with its plans to construct a stadium and did in fact complete an 80,000-seat open arena in the Town of Orchard Park. In October, 1971 the county entered into an exclusive leasehold agreement with Buffalo Bills Division of Highwood Service, Inc. to occupy and maintain the stadium and incidental facilities for a term of 25 years (plus three five-year renewable option periods) commencing on August 1, 1973. Under the terms of the agreement the lessee (Buffalo Bills) has the exclusive right to use and occupy the stadium and the right to sublease the stadium and related facilities. The county's right to use and occupy the stadium for "County Events" is subject to the approval of the lessee which approval may not be unreasonably withheld. Rentals are established as percentages

of gross ticket sales with a minimum annual rental of $500,-000 per lease year. The lease expressly states that it is the intention of the parties that the county shall never receive any more under the lease than is necessary to repay the amount of money needed to retire the stadium bonds plus the costs of structural repairs and replacements. Thus, neither the construction of the stadium nor the leasehold agreement was contemplated by the county as a revenue producing program over and above the cost of the project. Finally, the lease provides that in the event that the lessee's property becomes subject to tax levies by the county or any municipality located within the county, then the annual rentals due thereunder shall abate in an amount equal to such taxes and the lessor is required to co-operate with the lessee to have such assessment rescinded and such taxes abated.

From June 14, 1973 to June 19, 1974 the property was carried on the Town of Orchard Park tax rolls as tax-exempt property. On March 15, 1974 the State Board of Equalization and Assessment rendered an opinion to the Orchard Park Assessor which concluded that the stadium and property leased to the Buffalo Bills was not entitled to a tax exemption under section 406 of the Real Property Tax Law. In a memorandum of law in support of this position, the State Board of Equalization and Assessment maintained that the legislative declaration of public purpose (L 1968, ch 252) without specific mention of real property tax status did not automatically place the property within the exempt status set forth in section 406 of the Real Property Tax Law. The board further concluded that a strong factual basis exists for the taxability of the leased property because of the limited "public" benefits of the facility and the uneven rights and privileges between the public and private interests in the stadium under the existing lease agreement with the Buffalo Bills.

As a result of this opinion the Erie County Legislature requested an amendment to the original enabling legislation in a home rule request to the New York State Legislature. On May 31, 1974 the Governor signed into law chapter 699 of the Laws of 1974 which attempted expressly to confer tax-exempt status upon the property by declaring that, "The financing, construction, operation, leasing and use of a stadium and all purposes as authorized by this act are governmental and public purposes of the county of Erie."

The purpose of this special act was clearly intended by the

Legislature as an expression of legislative intent that the stadium constructed in Erie County for "all purposes mentioned are and shall be deemed to be the public and governmental purposes of the county of Erie." (L 1974, ch 699.)

Notwithstanding this act, on June 19, 1974 the Town of Orchard Park Assessor reversed his previous position and notified the County of Erie that he was rescinding the tax-exempt status of the stadium and placing the property on the tax rolls of the town. Upon protest by the county the Orchard Park Board of Assessment Review upheld the determination of the Town Assessor.

The County of Erie thereupon commenced this article 78 proceeding to annul and set aside the determination of the Town of Orchard Park Assessor and Board of Assessment Review and to direct that the stadium be listed as tax-exempt property in said town. Special Term granted judgment for the County of Erie, concluding that the actual present usage of the subject property, as well as the legislative history, clearly establishes that the stadium was devoted to the public use and thus entitled the county to a tax exemption pursuant to statute. The appeal follows from this judgment.

All real property within the State is subject to real property taxation unless exempt therefrom by law (Real Property Tax Law, § 300). Exemptions from taxation are entirely matters of legislative grace. Statutes granting tax exemptions are strictly construed against the taxpayer, but a construction so literal and narrow that it defeats the exemption's settled purpose is to be avoided *(Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 153; *Erie County Agric. Soc. v Cluchey,* 49 AD2d 40; *Erie County Water Auth. v County of Erie,* 47 AD2d 17). The pertinent statute in this case is section 406 of the Real Property Tax Law which provides, in part: "1. Real property owned by a municipal corporation within its corporate limits *held for a public use* * * * shall be exempt from taxation" (emphasis added). Mere ownership by a municipal corporation is not sufficient to entitle the property to tax-exempt status. The property must be held for a public use. What comprises a public use has never been defined with exactitude and depends upon the peculiar circumstances of each case. Within the meaning of the statute, "[h]eld for a public use" has been said to require "that the property should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation

and enjoyment by the public, or by public agencies" *(Town of Harrison v County of Westchester,* 13 NY2d 258, 263; *County of Herkimer v Village of Herkimer,* 251 App Div 126, 128, affd 279 NY 560).

It is conceded that the purposes enunciated in the enabling legislation (L 1968, ch 252) are public purposes. The question now under consideration is whether Rich County Stadium is held for a public use and not whether it was constructed to serve a public purpose. Appellants' main argument is that the dominion and control which the private lessee exercises over the stadium and the manner in which it is used primarily benefit the Buffalo Bills and not the people of Erie County. Appellants further contend that since the public receives only an incidental benefit, Rich County Stadium should be denied tax-exempt status.

The fact that a private business derives a benefit *(County Dollar Corp. v City of Yonkers,* 47 Misc 2d 627) or that the county has leased the property to a private party does not by itself defeat the exemption, if the over-all use is deemed to be in the public interest *(Bush Term. Co. v City of New York,* 282 NY 306; *Matter of State Ins. Fund v Hamblin,* 31 Misc 2d 977, affd 19 AD2d 592).

The issue is whether the nonqualifying tenant uses the property for a purpose recognized by the Legislature as benefiting the public. If the use is found primarily to benefit the nonqualifying tenant or as only incidentally related to the public purpose, then no tax exemption will be granted *(Town of Harrison v County of Westchester,* 13 NY2d 258; *County of Herkimer v Village of Herkimer,* 251 App Div 126, affd 279 NY 560; *Erie County Water Auth. v County of Erie,* 47 AD2d 17, *supra;* see *Erie County Agric. Soc. v Cluchey,* 49 AD2d 40, *supra; Matter of Genesee Hosp. v Wagner,* 47 AD2d 37; *Matter of Prior Aviation Serv. v Board of Assessors,* 46 AD2d 219). In the instant case, as a municipal corporate owner, Erie County is entitled to exemption if the property is used for a purpose recognized by the Legislature as qualifying for tax exemption. Rich County Stadium is presently being devoted to the purposes contemplated by the exempt owner and which are recognized as public purposes by the Legislature (L 1968, ch 252; L 1974, ch 699). While these special legislative acts cannot in and of themselves grant tax exemption, they are, nonetheless, valid indicia of legislative intention. Tax-exempt

status, in this case, is conferred by subdivision 1 of section 406 of the Real Property Tax Law.

Presently, Rich County Stadium is being employed in furtherance of the exact purpose for which it was contemplated, i.e., to provide the residents of Erie County the benefit of a first-class recreational, sports and cultural facility. The existence of a private profit motive by the lessee does not preclude the operation of the stadium from being a public purpose *(Denihan Enterprises v O'Dwyer,* 302 NY 451; *Matter of Murray v LaGuardia,* 291 NY 320). In fact, the Court of Appeals previously recognized that it was reasonable and consistent with the project's public purpose that Erie County should authorize that the management, operation and maintenance of the stadium be carried out by a private organization with expertise in this field. Whether a municipal or private corporation operates the stadium does not affect the benefit derived by the public *(Matter of Murphy v Erie County,* 28 NY2d 80, *supra).*

Therefore, the judgment should be affirmed.

MARSH, P. J., MOULE, DEL VECCHIO and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.