40 N.Y.2d 194 (1976)
In the Matter of Erie County Agricultural Society, Appellant,
v.
George L. Cluchey, as Assessor of the Town of Hamburg, Respondent.
Court of Appeals of the State of New York.
Argued June 7, 1976.
Decided July 1, 1976.
Edward D. Siemer for appellant.
Walter L. Rooth, Town Attorney (Francis X. Murphy of counsel), for respondent.
Chief Judge BREITEL and Judges JASEN, JONES and FUCHSBERG concur with Judge COOKE; Judge GABRIELLI dissents and votes to affirm in a separate opinion in which Judge WACHTLER concurs.
*196 COOKE, J.
The Erie County Agricultural Society was organized in 1819 and incorporated in 1856. Its past as well as present purpose remains the promotion of the agricultural, horticultural, mechanical and manufacturing interests of Erie County and its principal activity continues to be the holding of the annual Erie County Fair and Exposition. The fair, one of the largest in the United States, runs for 9 days in the month of August, with the 12 days before set aside for preparation and the 7 after for cleanup. Planning, co-ordinating and running the fair, however, require a year-round effort and for that reason the society maintains offices and staff at the fairground on a year-round basis. In addition, at times *197 when the fair is not in operation, the society makes portions of the fairgrounds and its buildings available, without charge, to various public groups for exhibitions, banquets, picnics, sales and meetings. In 1973, for example, there were 25 such functions held at the fairground for one or more days each.
In 1869, for the purpose of establishing permanent exhibition grounds, the society acquired a parcel of land within the Town of Hamburg, which land has been the site of the annual fair for more than 105 years. At present there are 66 permanent buildings on the fairgrounds, including 26 barns and exhibition facilities for housing animals and storing feed, 12 buildings devoted to special fair exhibits and 12 others devoted to fair administration. A racetrack with grandstand, clubhouse and kitchen facilities also is found on the premises.
In 1957, the society entered into a lease agreement with the Buffalo Trotting Association, Inc., for a term of 20 years commencing January 1, 1962. The lease provides that the Trotting Association may use the land and certain of the buildings to conduct harness racing meets in any year during the term of the lease but that such meets are not to extend into the time that the premises are used exclusively for the fair, which includes those periods needed for preparation and cleanup. From this lease, the society derives substantial income.
For the 103 years that preceded 1973, the real property owned by the society was assessed by the Town of Hamburg, but no real property tax was imposed, as the entire 215-acre parcel was entered on the tax-exempt portion of the assessment roll. In 1973, however, the town assessor determined that the real property used by the Trotting Association under the terms of the lease with the society should be taxed and, accordingly, some 52 acres were entered upon the regular portion of the assessment rolls. An action was commenced by the society under article 7 of the Real Property Tax Law to challenge that determination and strike the assessment from that portion of the tax roll. On the basis of a defective description, the society's motion for summary judgment was granted. In 1974, the town assessor, using a revised description, once again entered approximately 52 acres of the society's land upon the regular portion of the assessment rolls and once again the society challenged such entry. While the society's motion for summary judgment was denied by Special Term, the Appellate Division modified, granting partial summary *198 judgment to the town assessor and declaring that the real property subject to the lease was subject to real property taxes. The Appellate Division stated that summary judgment was otherwise properly denied, since a trial would be required to resolve the issue of whether the assessment was illegal because of inequality or overvaluation. The question before this court is whether the Agricultural Society, by virtue of the Trotting Association's use of the leased portions of the fairgrounds, is no longer entitled to a tax exemption as to those portions.
The tax exemption for land owned by agricultural societies is found in section 450 of the Real Property Tax Law which provides in toto: "Real property owned by an agricultural society and permanently used by it for exhibition grounds shall be exempt from taxation and exempt from special ad valorem levies and special assessments to the extent provided in section four hundred ninety of this chapter" (emphasis supplied). The language of this section has been continued almost unchanged from the time of its original enactment as chapter 183 of the Laws of 1856. The two requirements it enunciates are: (1) that the real property be owned by an agricultural society and (2) that said property be permanently used by the society for exhibition grounds.
Though fairs can be traced back to primitive or Biblical times, early ones were primarily religious festivals. By the Middle Ages, commercial and educational elements had become predominant and fairs became a means of promoting national and international trade. It was in eighteenth century England that the first agricultural fair was held, and in this Country, through the inspiration and efforts of Elkanah Watson, a wealthy Albany businessman, the first county fair was held in Pittsfield, Massachusetts, in the fall of 1810. The success of this fair coupled with the continued enthusiasm and work of Watson led to the establishment of county agricultural societies in many counties in New York State. Under an act passed in April of 1819 (L 1819, ch 107, passed April 7, 1819), a board of agriculture was created and the amount of $10,000 was appropriated to be distributed among county agricultural societies for the purpose of carrying on county fairs. When financial support was withdrawn, activity dwindled, so that by 1830, only one fair had survived. The following years, however, brought renewed interest and, because of the agricultural societies' self-reliance, the Legislature once *199 again provided financial support. In order to encourage the establishment of permanent grounds for county fairs, the Legislature provided for the real property tax exemption presently found in section 450. Such exemption, by fostering permanent fairgrounds, helped to reduce the expenses involved in setting up the fairs, as fairs had previously been required to move from community to community. Additionally, by its support of permanent fairgrounds, the exemption helped fairs gain public recognition which led to increased attendance and permitted fairs to flourish. In the context of the agricultural history of New York State, it has been said that the county agricultural societies and the fairs they promote have been of inestimable value to the farmers of the State. (For a more detailed history of county fairs in New York State, see, generally, Fairs, USA, New York State [Littlehale Ed, 1970], pp 4-9, 13-22; Hedrick, History of Agriculture in State of New York, pp 112-130 [1933].)
In its opinion, the Appellate Division stated that under New York law, the right to a real property tax exemption is generally predicated upon a two-pronged test involving ownership and use. Although section 450 sets forth such a dual test, the court, by drawing an analogy with other sections of article 4 of the Real Property Tax Law, added a requirement to section 450, somewhat akin to "exclusivity of use", and concluded that, as to the portions of land used by the Trotting Association, there should be no exemption (49 AD2d 40, 43-44).
Article 4 of the Real Property Tax Law, in which section 450 is found, is divided into two titles, both of which enumerate exemptions to real property taxes. Title 1 relates to public property while title 2 pertains to private, and it is the latter which includes the exemption for property owned by agricultural societies.
Subdivision 1 of section 406, found in title 1, pertains to the exemptions for "Real Property owned by a municipal corporation within its corporate limits" and requires that for such property to benefit from the exemption, it must be "held for a public use". Cases interpreting the public use requirement have stated that where property held by an agency of the State is used primarily to obtain revenue or profit it is not "held for a public use" and thus is not ordinarily entitled to an exemption. On the other hand, where property is held by a State agency primarily for a public use, it is entitled to an exemption even though the State agency incidentally derives *200 income from the property (Bush Term. Co. v City of New York, 282 N.Y. 306, 321; Erie County Water Auth. v County of Erie, 47 AD2d 17, 20-21).
Recognizing a similarity between public entities and agricultural societies, the latter of which it viewed as quasi-public entities, and because there had been no reported case law analyzing the requirement of "permanent use" of section 450, but merely conflicting agency opinions, the Appellate Division applied the interpretation of subdivision 1 of section 406's use requirement to that of section 450. Although aware of the differing statutory provisions, the Appellate Division stated that "it seems inconsistent to permit a quasi-public agricultural society to maintain its tax exemption on this single requirement of permanent ownership when all other public agencies, including the State, must additionally establish that the land is held for a public purpose (see Real Property Tax Law, § 406, subd 1; Town of Harrison v County of Westchester, 13 N.Y.2d 258; Matter of Oak Is. Beach Assn. v Mascari, 47 Misc 2d 21, affd 25 AD2d 496, affd 18 N.Y.2d 861; Village of Watkins Glen v Hager, 140 Misc 816, affd 234 App Div 904)" (49 AD2d, at p 45).
Where the wording of a statute is not clear, it may be necessary for a court to interpret, so as to determine what the Legislature intended. Courts should not, however, add restrictions or limitations where none exist, nor should they interpret what has no need of interpretation. When words have a definite and precise meaning, courts should not go elsewhere in search of conjecture so as to restrict or extend that meaning (McCluskey v Cromwell, 11 N.Y. 593, 601). In Williams Institutional Colored M. E. Church v City of New York (275 App Div 311, affd 300 N.Y. 716), for example, defendant had challenged plaintiff's right to a real property tax exemption under a New York statute granting exemptions to corporations organized exclusively for religious purposes on the grounds that the plaintiff church was a foreign, not domestic, corporation. The court, finding no such statutory distinction, held that "where the exemption in the statute is express, as it here is, an institution within the exemption is mandatorily exempt and the courts may not insert qualifying clauses or add conditions not contained in the act" (275 App Div, at p 316). Likewise in People ex rel. Doctors Hosp. v Sexton (267 App Div 736, affd 295 N.Y. 553), plaintiff sought to overturn the defendant's denial of a similar exemption to a hospital *201 which, defendant had contended, did not extend adequate free care services to the public. The Appellate Division in reversing the trial court's ruling that charitable work was a quid pro quo for the exemption held that "[t]he statute makes no such requirement. The term `hospital' in the law quoted is employed therein without any limitation whatever. If it were the intention of the Legislature to require hospitals to furnish free service to the needy as a condition precedent to tax exemption, appropriate language to that effect could readily have been employed. `We are not privileged, by judicial construction, to legislate. If a change in the wording of the provision is desired, it must be made by the Legislature'" (267 App Div, at p 740). While this court may agree with the Appellate Division that the differing requirements of subdivision 1 of section 406 and section 450 may result in unfairness, we have no authority to read a requirement into a statute under the guise of construction or interpretation. Were we to do so, we would be legislating (Matter of Anonymous [St. Christopher's Home], 40 N.Y.2d 96).
The Legislature has, in certain instances, set "exclusive use" as the test for exemptions benefiting private property but, when it has done so, it has used clear and direct language. Thus, as with real property "owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes" such property must be "used exclusively for carrying out thereupon one or more of such purposes" (emphasis added) (Real Property Tax Law, § 421, subd 1, par [a]). In the instant case, however, there is no "exclusive use" test to be applied, as the statute itself does not require one and we cannot employ one found in another section of the statute without legislative direction.
While courts of other jurisdictions have considered questions similar to the one here, we cannot look to them for guidance for, again, each case turns upon the wording of the particular statute granting the exemption and the wording of all such statutes differ from that of section 450 of the Real Property Tax Law (see, e.g., Maryland State Fair & Agric. Soc. v Supervisor of Assessments of Baltimore County, 225 Md 574; Assessors of West Springfield v Eastern States Exposition, 326 Mass 167; Town of West Hartford v Connecticut Fair Assn., 88 Conn 627; *202 City of Lewiston v All Maine Fair Assn., 138 Me 39).
Rather than look elsewhere, to other provisions of article 4 or to other jurisdictions, to determine whether the society is entitled to an exemption for the entirety of its 215 acres, we should instead look to the statute itself and give its language usual and ordinary meaning (Cooper-Snell Co. v State of New York, 230 N.Y. 249, 254-255), reading it in light of the purpose sought to be accomplished (Matter of Brooklyn Edison Co. v Davidson, 269 N.Y. 48, 51), the history of the period and that of the act (Wiley v Solvay Process Co., 215 N.Y. 584, 588). As this court views the statute, the society need only demonstrate its permanent use of the property as a fairground which it has done by its showing of 105 years of continuous ownership, coupled with its use of the property in each of those years as the site for the annual Erie County Fair and Exposition. Certainly the legislative purpose as heretofore expressed has been carried out by the granting of this exemption.
In a recent enactment, the Legislature indirectly broadened the benefits afforded to agricultural societies (see Real Property Tax Law, § 421, subd 2). Moreover, the enactment of chapter 1075 of the Laws of 1971 evinces a legislative awareness of the situation here. Section 3 of chapter 1075 authorizes a town to impose a tax on admissions to harness horse racing meetings where the site and facilities of the meeting are leased from a tax-exempt organization. As was noted in the Appellate Division opinion (49 AD2d 40, 45, n), an examination of the bill jackets and legislative correspondence reveals that this legislation was passed with the Erie County Agricultural Society's fairgrounds and the harness racing conducted thereon specifically in mind.
We are not unmindful, however, of what the Appellate Division termed (pp 44-45) "significant recent efforts to broaden the real property tax base" (see, e.g., Matter of Hellerstein v Assessor of Town of Islip, 37 N.Y.2d 1; Matter of Association of Bar of City of N. Y. v Lewisohn, 34 N.Y.2d 143). It is possible that on balancing the current needs of such societies as against communities' needs with respect to broadening tax bases, the Legislature may choose to make such statutory alterations in the exemption as it deems advisable. Until that time, however, we must restrict ourselves to the express wording of the statute.
On appellant's motion for leave to appeal, this court denied *203 leave upon the ground that an appeal as of right would lie (37 N.Y.2d 807). The order sought to be appealed from was, however, nonfinal, from which there is no appeal as of right. Accordingly, we vacate the prior order which denied leave to appeal and, upon further consideration, grant appellant's motion for leave to appeal.
The order of the Appellate Division should be reversed and summary judgment granted to the Erie County Agricultural Society, with costs.
GABRIELLI, J. (dissenting).
I dissent and vote to affirm on the well-reasoned opinion by Mr. Justice SIMONS, speaking for an unanimous court at the Appellate Division, with the following additional comments. By the decision of the majority in this case there is now nothing to deter petitioner from leasing any or all of its valuable realty (appraised for tax purposes at $1,766,969) to highly profitable commercial enterprises and thereby insulate them from the rightful obligation to pay real property taxes to the great detriment of local school district, town, and county taxpayers who must shoulder the burden of supplying these "preferred" lessees with expensive community services such as road maintenance, and police and fire protection, free of charge. In this fashion the thousands of other taxpayers in the school districts and communities must bear this unconscionable burden because of the preferential treatment given to this highly profitable raceway without discharging its obligation for community services in the same fashion as every other business. The legislation interpreted herein certainly was not designed to have such an untoward effect with the resultant unfortunate burden on the other already financially oppressed citizens of the area.
On the court's own motion, this court's order of September 19, 1975 denying appellant's motion for leave to appeal vacated and, upon further consideration, motion for leave to appeal granted.
Order reversed, with costs, and summary judgment granted to petitioner.