OPINION OF THE COURT
Nanette Dembitz, J.
The major defense presented by the alleged father in this paternity suit is that petitioner had sexual intercourse with three other men during the period when concededly conception occurred and respondent had intercourse with her. This defense presents the question of the applicability of section 531 of the Family Court Act, which provides: “If the respondent shall offer testimony of access by others at or about the time charged in the complaint, such testimony shall not be competent or admissible in evidence except *762 when corroborated by other facts and circumstances tending to prove such access.”
For reasons stated below, the corroboration requirement applies to the testimony of access offered by respondent, and such testimony cannot be deemed corroborated within the meaning of the Family Court Act. Disregarding respondent’s claimed defense in accordance with the statutory mandate,[1] the court concludes that the evidence summarized below and detailed in findings filed with this opinion, constitutes clear, convincing and entirely satisfactory evidence that respondent is the father of petitioner’s child; orders of filiation, and for support, costs, and attorney’s fees will be entered.
TESTIMONY AS TO ACCESS BY OTHERS
The manager of respondent’s business testified that on an occasion during petitioner’s pregnancy he saw her having intercourse with a friend of respondent’s; a “girl friend” of respondent’s gave similar testimony as to a different occasion and a different friend; and another friend of respondent’s testified that he performed an act of intercourse with petitioner near the period during which conception concededly occurred. These three acts took place, according to the respective testimony of respondent’s three witnesses, during social gatherings which petitioner and respondent attended together, but at moments when they were not in each other’s company. There was no corroboration of the testimony of respondent’s manager or his two friends, except for petitioner’s own testimony on her prima facie case that she in fact attended such social gatherings with respondent and was acquainted with his manager and friends.
The first question presented by the testimony elicited on respondent’s behalf, is whether section 531 includes testimony that a witness saw a petitioner mother have intercourse with someone other than respondent, as distinguished from a witness’ testimony that he himself had such *763 intercourse. This court respectfully disagrees with the opinion in a sister department that testimony of the former type — here given by respondent’s manager and “girl friend” — is not covered by section 531. (See Matter of Commissioner of Social Servs. of County of Erie v Hayes, 74 AD2d 731.) The provision requiring corroboration “[i]f the respondent shall offer testimony of access by others”, literally refers to the subject matter of the testimony, rather than the identity of the witness or his or her connection with the act of intercourse. The conclusion that the provision should be read literally is supported by its context. For, the preceding sentence in section 531 reads: “If the mother is married both she and her husband may testify to nonaccess.” Since this provision speaks in terms of particular witnesses rather than subject matter, it seems clear that the choice of words and focus in the “access by others” provision was deliberate. The access provision is clear and unambiguous and there is no warrant to depart from its literal meaning. (See Matter of Carr v New York State Bd. of Elections, 40 NY2d 556, 559; Matter of Erie County Agric. Soc. v Cluchey, 40 NY2d 194, 200-201, as to governance of literal and unambiguous meaning; regarding importance of context in statutory construction, see Motor Vehicle Acc. Ind. Corp. v Eisenberg, 18 NY2d 1, 3-4.)
It is true that the Court of Appeals decision on the constitutionality of section 531 quotes approvingly a text-writer who suggested that the rationale of the provision lay in “ ‘the comparative ease with which an unscrupulous putative father may suborn perjury and obtain equally unscrupulous persons to testify, for a price that they had had intercourse with the complainant.’ ” (Matter of Dorn “HH” v Lawrence “II”, 31 NY2d 154, 157.) However, the court makes no suggestion that section 531 is limited to the testimony of those who claim to have had the access; and it is clear that the danger of perjury is no less in the case of a friend of respondent’s who testifies as to observation of the act with another of respondent’s friends. A petitioner would have equal difficulty in refuting such testimony as if the alleged actor testified;[2] she can hardly be expected to *764 secure aid in her defense from respondent’s friends who allegedly were observed by other friends in acts of intercourse with her. For refutation of the testimony of the “observer witnesses” would require testimony by a mutual friend of theirs and respondent that they had lied in his behalf.
The quality of the testimony in the instant case confirms the assumptions apparently made by the Legislature that a claim of access is difficult to refute and that a respondent’s friends may well testify for him regardless of truth. Thus, for example, petitioner could only deny that respondent’s “girl friend” had, as she testified, observed petitioner having intercourse with respondent’s male friend. However, the witness belied her own credibility when she emphatically denied on cross-examination that petitioner and respondent had taken a Caribbean trip during her pregnancy, although respondent himself admitted it.
In sum, this court concludes that section 531 of the Family Court Act requires corroboration of the testimony of respondent’s three witnesses.
CORROBORATION OF TESTIMONY OF ACCESS BY OTHERS
Research reveals no previous ruling on whether mere presence and acquaintance constitutes corroboration of testimony as to an act of sexual intercourse.[3] Looking therefore to the criminal law, where there is a wealth of corroboration rulings compared to the paucity in the paternity field, it is well established that “mere association” and mere presence is insufficient to serve as corroboration. (See People v Kress, 284 NY 452, 460; People vBartulis, 271 App Div 892.) “[If] evidence * * * has no real tendency to connect defendant with the commission of the crime, it is insufficient” (People v Kress, supra, p 460). “The corroborative evidence * * * must be evidence from an independent source of some material fact tending to show * * * that the crime has been committed”. (People v Mullens, 292 NY 408, 414.) Consistent with this principle, the evidence held to constitute corroboration in paternity cases has been far *765 stronger than that in the instant case of mere presence and acquaintance. (See Phillips v Broadwell, 63 AD2d 840, 841.)
If evidence of presence or acquaintance were deemed to satisfy the corroboration requirement, the requirement would afford no protection against perjury. For, in any case where a petitioner and respondent had a continuing and general relationship rather than mere isolated acts of sexual intercourse, petitioner’s own testimony as to the diameters of the relationship could be claimed, as here, to constitute corroboration.
As to an argument that the testimony as to the act of intercourse with each man corroborates that as to each other (in the sense of each showing infidelity to respondent), testimony of the same type (“by three of his [respondent’s] fellow students *** that each had had sexual intercourse with petitioner”) was precisely the evidence held to be “without corroboration * * * and * * * properly excluded” in Matter of Dorn “HH” (31 NY2d 154, supra).
In sum, it is clear both on authority and reason that there was here lacking corroboration of the “testimony of access by others” within the meaning of section 531 of the Family Court Act. Since no corroboration was supplied, such testimony must be deemed stricken, or incredible as a matter of law, in evaluating the evidence of respondent’s paternity.
EVIDENCE OF RESPONDENT’S PATERNITY
Respondent admitted to intercourse with petitioner during the period when conception concededly occurred as well as prior and subsequent thereto; he also admitted to the truth of her testimony as to his participation with her in many of the social events, trips, and other occurrences during her pregnancy, as well as his payment of money for her rent. The conflict in their testimony relates mainly to his denial that he acknowledged both in words and conduct that petitioner’s expected child was his, or that he had an emotional or affectionate relationship with petitioner.
However, petitioner’s testimony was supported not only by testimony of her friends and relatives, whose demeanor gave their respective words the ring of truth, but also in *766 one instance by the testimony of a stranger. Thus, the nurse directing the natural childbirth training clinic at St. Vincent’s Hospital testified that respondent had in fact, as petitioner testified, attended four natural childbirth training classes with her during the latter part of her pregnancy. The nurse also testified that she did not interrogate the male companions of the women in these classes as to their relationship, but that it was assumed each was the father of the expected child of the woman he accompanied.
Respondent’s testimony that he accompanied petitioner to the classes merely because of pity for her predicament is incredible. Respondent according to his own testimony was a man in his late 30’s or 40’s of some degree of sexual sophistication, who admittedly knew that petitioner had from the beginning of her pregnancy regarded him as the father. It seems most unlikely that he would perform that role publicly unless he also so regarded himself and indeed welcomed being so regarded. The same must be said of his admission that he visited petitioner at the hospital after the delivery and the credible evidence that his mother accompanied him.
There is of course no requirement in a paternity case that the mother prove the father’s positive feelings towards her and towards his paternity. However, the evidence that respondent did enjoy such emotions and demonstrated that he had no reason to doubt his paternity, strengthens the credibility of petitioner’s testimony that she had sexual intercourse with no one but respondent during the period when conception occurred.
For the above reasons and others stated in the filed findings, it is concluded that the evidence of respondent’s paternity is clear, convincing, and entirely satisfactory.

. Petitioner refrained from formal objection to the admission of the testimony as to access by others, though contending that the testimony is incredible. Section 531 governs here for two reasons: (1) the principles it embodies are so fundamental to justice that they must be enforced even in the absence of objection; (2) section 531 shows that as a matter of legislative policy and law uncorroborated testimony of access must be held incredible.

. It is ancient wisdom that a charge of having had sexual intercourse “ ‘is so easy to make and so hard to defend’ (See Commissioner of Public Welfare of City of N. Y. v Kotel, 256 App Div 352, 353.)

. However, the requirement is a time-honored one, having been legislatively imposed at least 40 years ago (see Commissioner of Public Welfare of City of N. Y. v Torres, 263 App Div 19).